# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2618

_____

United States of America,

    Appellee,

  v.

Dale Michael Lucas,

    Appellant.

\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* Northern District of Iowa.
\*
\*
\*

_____

Submitted: February 12, 2008
Filed: April 4, 2008

_____

Before LOKEN, Chief Judge, RILEY and SMITH, Circuit Judges.

_____

RILEY, Circuit Judge.

  A jury convicted Dale Michael Lucas (Lucas) of attempting to manufacture methamphetamine after a prior conviction for a felony drug offense, being a felon in possession of a firearm, and possession of a firearm in furtherance of a drug trafficking offense. The district court[1] imposed a total sentence of 360 months imprisonment. Lucas appeals his conviction and sentence, arguing the district court erred by: (1) admitting evidence of other criminal conduct that was irrelevant to the

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

offenses in question; and (2) finding Lucas was a career offender under United States Sentencing Guidelines (U.S.S.G.) § 4B1.1 because his second Iowa conviction for operating a motor vehicle under the influence of alcohol (OWI) constituted a crime of violence under U.S.S.G. § 4B1.2. We affirm.

## I.  BACKGROUND

The charges against Lucas arose following a high-speed car chase on December 2, 2003. Around 7:43 p.m., Officer Jess Bernhard (Officer Bernhard) began pursuing a car as it left a trailer court in Waukon, Iowa. Officer Bernhard believed the driver to be Robert Bark (Bark).[2] Officer Bernhard pursued the car at speeds approaching 80 miles per hour. After temporarily losing sight of the car on a gravel road, Officer Bernhard spotted the stopped car. The driver's door was open and the subject got out of the car. As Officer Bernhard approached, the subject jumped into the ditch and fled. Officer Bernhard pursued the subject on foot, in the dark, through a wooded area. After chasing the subject some distance into the woods, Officer Bernhard "heard a whole bunch of sticks breaking" and "what sounded like a splash." Officer Bernhard gave up the chase when he walked over to the area and observed a twenty to thirty foot cliff with a creek below. "After a couple minutes of moaning and groaning" the subject ran off into the woods.

Officer Bernhard returned to the area where his squad car and the subject's car had stopped. Officer Darrell Simmons (Officer Simmons) arrived to assist Officer Bernhard in searching the car. In the ditch next to the subject's car, the two officers found a digital scale, a police scanner, and a loaded Intratech .22 caliber handgun.

The following morning, officers executed a search warrant at Knospe's trailer house, based in part on the items found in her car. Knospe and Bark were inside the

---

[2]The car was determined to be registered to Sharnell Voshell, n/k/a Sharnell Knospe (Knospe). At the time of these events, Bark was Knospe's boyfriend.

trailer. According to Officer Simmons, Bark looked tired, like he had just gotten out of bed, but did not appear dirty or injured. When Officer Bernhard saw Bark, he determined Bark was not the person he had chased the night before.

On December 7, 2003, Lucas was arrested in Crawford County, Wisconsin, with a backpack containing a tank of anhydrous ammonia. Officer Bernhard was called to assist in the investigation. Officer Bernhard immediately recognized Lucas as the driver of the car he had pursued on December 2, 2003.[3]

Lucas was charged with attempting to manufacture methamphetamine after a prior conviction for a felony drug offense, in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(C), § 846 and § 851 (Count 1); being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2) (Count 2); and possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 3). At Lucas's trial, Officer Bernhard identified Lucas as the driver. Knospe testified Lucas borrowed her car on the morning of December 2, 2003, and she did not see her car or Lucas again on that day. Various witnesses identified numerous items found in or near the car as belonging to Lucas, including a CD labeled "Joey's Songs," a Green Bay Packers coat, a hat, boots, gloves, an electric beard/mustache trimmer with "Dale Lucas" and a prisoner number engraved on it, a shaving cream can with "Lucas" written on it, a small Sentry safe with methamphetamine paraphernalia, a tool kit for extracting lithium from lithium batteries, and the digital scale found in the ditch. Inside the car, the officers also found .22 shells, the same shells that would be used in the handgun found in the ditch; 3.4 grams of methamphetamine; 8.3 grams of pseudoephedrine; a coffee grinder; drain opener; salt; Coleman fuel; a Coleman heater and glassware; aluminum foil; coffee filters; plastic tubing; and a tank of anhydrous ammonia.

---

[3]Lucas pled guilty to possession of drug paraphernalia for the Wisconsin arrest.

In addition to testimony relating to the December 2, 2003 incident, the government presented evidence of Lucas's criminal conduct occurring on dates other than December 2, 2003. This included testimony from: (1) Officer Scott Green relating to a 2001 search of Lucas's storage shed in Calmar, Iowa, and Lucas's resulting conviction of a drug crime; (2) Michael Weist and Stacie Martin about Lucas's drug activities occurring during the summer of 2003 involving the manufacture of methamphetamine; (3) Officer Dennis Cain as to events occurring on November 24, 2003, involving methamphetamine precursors found in a car associated with Lucas; and (4) Knospe regarding Lucas's methamphetamine activities and possession of the gun recovered in the ditch. Lucas objected to this testimony, arguing the testimony was irrelevant under Fed. R. Evid. 401 and inadmissible under Fed. R. Evid. 404(b) as evidence of other crimes, wrongs, or acts to show Lucas's propensity to commit the crimes charged in the instant case. The district court overruled these objections.[4]

The jury found Lucas guilty on all three counts. At sentencing, the district court found Lucas's second Iowa OWI conviction constituted a crime of violence under U.S.S.G. § 4B1.2. The district court then determined Lucas was a career offender under U.S.S.G. 4B1.1, resulting in a Guidelines range of 360 months to life. Lucas objected to his classification as a career offender, arguing his second OWI conviction

---

[4]At a pretrial conference, the district court found the contested evidence was relevant to a material issue in the case, specifically, defendant's knowledge and intent; was similar in kind and not overly remote in time to the crime charged; was supported by sufficient evidence; and was higher in probative value than in prejudicial effect. The district court did not admit evidence of a high-speed chase in Wisconsin, alleged probation violations, or Lucas's statements about law enforcement, finding this evidence was "higher in prejudicial effect than probative value."

should not be considered a violent crime.[5]  The district court sentenced Lucas to 300 months imprisonment on Count 1, a concurrent 120 months imprisonment on Count 2, and a consecutive 60 months imprisonment on Count 3, for a total sentence of 360 months.

## II.    DISCUSSION
### A.    Evidence of Other Bad Acts

Federal Rule of Evidence 404(b) provides, in relevant part:

> **(b) Other crimes, wrongs, or acts.**  Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

We review for an abuse of discretion a district court's decision to admit evidence of other crimes, wrongs, or acts under Fed. R. Evid. 404(b), "revers[ing] only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." United States v. Thomas, 398 F.3d 1058, 1062 (8th Cir. 2005) (citations and internal quotation marks omitted). Evidence of other crimes, wrongs, or acts "is admissible if it is (1) relevant to a material issue; (2) similar in kind and close in time to the crime charged; (3) proven by a preponderance of the evidence; and (4) if the potential prejudice does not substantially outweigh its probative value." Id. (citations omitted).

We conclude the district court did not abuse its discretion in admitting the contested evidence to show Lucas's knowledge and intent.  First, Lucas's knowledge and intent were relevant to material issues in the case because the government was required to prove Lucas voluntarily and intentionally attempted to manufacture

---

[5]Lucas acknowledged at sentencing that his argument was contrary to Eighth Circuit precedent.

methamphetamine and knowingly possessed a firearm on December 2, 2003.[6] "Evidence of similar drug activity is admissible in a drug prosecution case because a defendant's complicity in other similar transactions serves to establish intent or motive to commit the crime charged." United States v. Johnson, 934 F.2d 936, 940 (8th Cir. 1991) (citation and internal quotation marks omitted). Evidence that Lucas possessed a firearm on a previous occasion is also relevant to show knowledge and intent. See United States v. Walker, 470 F.3d 1271, 1274 (8th Cir. 2006) (citation omitted).

The evidence of Lucas's other criminal conduct was similar in kind and sufficiently close in time to the crimes charged. "When admitted to show intent, the prior acts need not be duplicates, but must be sufficiently similar to support an inference of criminal intent." Id. at 1275 (citation and internal quotation marks omitted). "To determine if a crime is too remote in time to be admissible under Rule 404(b), we apply a reasonableness standard, evaluating the facts and circumstances of each case." Id. (citation omitted). "[T]here is no specific number of years beyond which prior bad acts are no longer relevant to the issue of intent." Id. (citation and internal quotation marks omitted). Here, the evidence showed: (1) Lucas was convicted of manufacturing methamphetamine about two years before the instant offenses; (2) in the months leading up to the instant offenses, Lucas was cooking methamphetamine; (3) less than one week after the instant offense, Lucas was arrested with a container of anhydrous ammonia in a backpack; and (4) Lucas possessed an

---

[6]Lucas argues the district court erred in admitting the contested evidence because his theory of the defense was that he was not the driver of the car, and he did not raise any issue of lack of knowledge or intent. However, the identity of the car's driver was not the only issue for the jury to decide. Because Lucas pled not guilty, the government was required to prove beyond a reasonable doubt each element of each crime charged. See United States v. Gilmore, 730 F.2d 550, 554 (8th Cir. 1984) (citation omitted) ("By pleading not guilty, the defendant put the government to its proof on all elements of the charged crime. . . . The government is not required to wait until the defendant posits a particular defense asserting a lack of one of the elements of the charged crime, but may prove up their case in anticipation of such a defense").

Intratech .22 caliber handgun during the fall of 2003. This evidence was similar in kind to the instant offenses, because both the earlier and contemporaneous offenses involved the manufacture of methamphetamine and the possession of a handgun. The other bad acts were undisputedly close in time to the instant offenses.

The government presented ample evidence the other criminal conduct occurred. Lucas pled guilty to and was convicted of the 2001 methamphetamine charge; Knospe testified Lucas possessed an Intratech handgun in 2003; several witnesses testified Lucas cooked methamphetamine in the months before the instant offenses; and Lucas admitted he had anhydrous ammonia in his backpack when he was arrested in Wisconsin on December 7, 2003. This evidence easily satisfies the preponderance of the evidence standard. See Thomas, 398 F.3d at 1062.

Finally, the probative value of the evidence was not substantially outweighed by its prejudicial effect. We give substantial deference to the district court's determination that the probative value of the evidence outweighed its prejudicial effect. See Walker, 470 F.3d at 1275 (citation omitted). A limiting instruction diminishes the danger of unfair prejudice. Id. The district court gave a thorough and accurate limiting instruction for Lucas.

Lucas argues that, without the evidence of other criminal conduct, the jury may have disbelieved Knospe's testimony that Lucas had borrowed her car, found Knospe had a motive to cover for her boyfriend, Bark, and concluded Bark was the driver. Put another way, Lucas suggests the jury may have found Knospe's testimony incredible had the jury not been told of Lucas's previous involvement with methamphetamine and possession of a firearm. Witness credibility is an issue for the jury to decide. See United States v. Rogers, 91 F.3d 53, 57 (8th Cir. 1996) (citation omitted). We see minimal link between Lucas's other criminal conduct and Knospe's credibility, and no unfair prejudice to Lucas. The evidence of Lucas's previous methamphetamine conviction, possession of a handgun, and manufacture of methamphetamine was

highly probative of Lucas's unmistakable knowledge and intent to manufacture methamphetamine and possess a firearm in the instant case.  In addition, the district court gave a limiting instruction, both during trial and in the final jury instructions, thereby minimizing any prejudice Lucas might have suffered.  We therefore conclude the district court did not abuse its discretion by determining the probative value of the contested evidence outweighed its prejudicial effect.

## B.    OWI Conviction

We review de novo a district court's application of the advisory sentencing Guidelines.  United States v. Spudich, 443 F.3d 986, 987 (8th Cir. 2006) (per curiam).

Lucas argues the district court erred in finding Lucas was a career offender under U.S.S.G. § 4B1.1 because Lucas's second Iowa OWI conviction constituted a crime of violence under U.S.S.G. § 4B1.2.  Lucas acknowledges his argument is contrary to Eighth Circuit precedent.  Nevertheless, Lucas asks this court to reverse the en banc opinion in United States v. McCall, 439 F.3d 967, 972 (8th Cir. 2006), which held a felony conviction for driving while intoxicated is a "violent felony" under 18 U.S.C. § 924(c) because it presents a serious risk of physical injury to another.[7]  See also Spudich, 443 F.3d at 987 (stating, because the definition of "crime of violence" under the Guidelines is nearly identical to a "violent felony" under 18 U.S.C. § 924(e), the same analysis applies to both terms).

---

[7]The parties agree that, because Lucas's second conviction for OWI had a maximum penalty of two years imprisonment, it constituted a prior felony conviction under the Guidelines even though it was considered an aggravated misdemeanor under Iowa law.  See United States v. Postley, 449 F.3d 831, 832 (8th Cir. 2006) (explaining aggravated misdemeanors in Iowa fall within the definition of a felony under the Guidelines because the punishment for an aggravated misdemeanor is up to two years).

A panel of this court may not overrule the decision of the en banc court; only the en banc court may overrule prior circuit precedent. <u>See</u> <u>United States v. Wilson</u>, 315 F.3d 972, 973-74 (8th Cir. 2003) ("this Court's precedent . . . prohibits any three-judge panel of the Court from overruling a previous panel opinion"); <u>United States v. Riza</u>, 267 F.3d 757, 760 (8th Cir. 2001) ("Only the court en banc may overrule . . . prior panel opinions"). We therefore hold the district court correctly determined Lucas's OWI conviction constituted a crime of violence.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

_____