# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3215

_____

| | | |
|---|---|---|
| United States of America | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Alexander Kirk, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 15, 2008
Filed: June 19, 2008

_____

Before GRUENDER, BALDOCK,[1] and BENTON, Circuit Judges.

_____

BALDOCK, Circuit Judge.

A grand jury issued a five count indictment charging Defendant Alexander Kirk with: (1) distributing marijuana, on or about February 10, 2006, in violation of 21 U.S.C. § 841(a)(1); (2) using a firearm during and in relation to a drug trafficking

---

[1] The Honorable Bobby R. Baldock, United States Court of Appeals for the Tenth Circuit, sitting by designation.

crime, on or about February 10, 2006, in violation of 18 U.S.C. § 924(c); (3) possessing marijuana with the intent to distribute on or about April 8, 2006, in violation of 21 U.S.C. §941(a)(1); (4) possessing a firearm in furtherance of a drug trafficking crime, on or about April 8, 2006, in violation of 18 U.S.C. § 924(c); and (5) being a felon in possession of a firearm, on or about February 10, 2006, in violation of 18 U.S.C. § 922(g)(1). The petit jury found Kirk guilty on all counts. On appeal, Defendant Kirk raises two points of error. First, Kirk contends the district court erred in denying his pretrial motion to separate his trial on Counts One and Two from his trial on Counts Three and Four. Second, Kirk argues the Government presented insufficient evidence at trial to support his convictions on Counts One and Two.[2] We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1). We **affirm** Kirk's conviction on Count I, **reverse** Kirk's conviction on Count II, and **remand** for resentencing.

I.

On April 8, 2006, Matthew Carillo contacted the Davenport Police Department to report a robbery. Officer Jonathan Tatum responded to his call. On Tatum's arrival at the scene, Carillo indicated that Nicholas Piles was the perpetrator of the robbery. Tatum obtained a physical description of Piles from Carillo. Carillo was also able to give Tatum several leads as to Piles' possible whereabouts. In addition to giving Tatum the address of several residences Piles frequented, Carillo described two

---

[2] In his brief, Defendant Kirk purports to challenge the district court's denial of his Motion for Acquittal on all counts. Kirk has failed, however, to "provide any reasons or arguments" to support his claim that the Government's evidence was insufficient to support his conviction on Counts Three, Four, and Five. United States v. Zavala, 427 F.3d 562, 565 n.1 (8th Cir. 2005). Because "undeveloped issues perfunctorily adverted to in an appellate brief are waived," we review the sufficiency of the evidence only in regards to Counts One and Two. United States v. McAdory, 501 F.3d 868, 870 n.3 (8th Cir. 2007); see also Fed. R. App. P. 28(a)(9)(A).

vehicles in which Piles sometimes traveled. One of these vehicles was a red conversion van with gold striping, gold spoked tires, and tinted windows. Carillo mistakenly informed Tatum that this van belonged to Defendant Alexander Kirk. But the van actually belonged to Kirk's associate Darnell Mosley. Officer Tatum relayed the information he obtained from Carillo over police radio.

Meanwhile, unaware of the reported robbery, Mosley drove his van to pick up Defendant Kirk at his girlfriend's home. They made a few stops before driving to meet Mosley's cousin, James Hill. Hill had arranged for Mosley to sell him marijuana. When Mosley and Kirk reached Hill's location, Mosley parked his van alongside a curb and Hall entered the backseat of the vehicle. Shortly thereafter, Officers Aric Robinson and Nathan Kelling happened upon Mosley's van. After noting that the van matched the description provided by Carillo, the officers reported their discovery. They then approached the van to determine if Piles, the robbery suspect, was inside.

Officer Robinson walked up to the driver's side of the vehicle, while Officer Kelling stationed himself at the front passenger side of the van. Mosley and Kirk spoke to the officers through the van's lowered front windows. A few minutes later, Officers Jonathan Tatum and Brian Butt also arrived on the scene. Officer Tatum took Officer Robinson's place at the driver's side window, while Officer Butt went to the rear passenger side of the van. Because Officer Kelling was in training at the time, Officer Robinson repositioned himself behind Officer Kelling, at the front passenger side of the van.

Officer Tatum proceeded to question Mosley concerning his knowledge of Piles, the robbery suspect. During the course of this conversation, Tatum noticed that Defendant Kirk was sliding down in his seat and reaching downward with his right hand. Tatum asked what Kirk was doing, but Kirk did not respond. When Tatum inquired a second time, Officer Kelling put his head through the front passenger side

window, noticed a handgun situated in the right passenger door pocket, and alerted the other officers to its presence. Kelling then opened the van's front passenger door and removed the gun.

Subsequently, the officers removed Kirk, Mosley, and Hill from the van and placed them in handcuffs. Patdown searches uncovered a bag containing sixteen grams of marijuana and a package of "Philly blunt cigars" on Mosley, and a small manual scale on Hill.[3] Mosley and Hill indicated that these items belonged to them. Officers also conducted a patdown search of Defendant Kirk. In Kirk's pockets, officers discovered three small bags, which contained a total of twenty-nine grams of marijuana, and $1,460 in predominantly small bills.

A search of Mosley's van failed to reveal any recent sign of marijuana use. But officers did find a small yellow pill with a bird emblem on the van's front console, an operable cell phone, and a small bag of marijuana underneath the front passenger seat, in which Defendant Kirk had been seated.[4] Closer examination of the firearm taken from the van's passenger door pocket, revealed it to be a Phoenix Raven .25 caliber semi-automatic handgun. Lab tests showed that the small yellow pill officers found on the van's front console contained ecstasy.

After reading Kirk his Miranda rights, Officer Kelling interviewed him at the scene. Kirk stated that the handgun and marijuana found in his pockets belonged to him. When Sergeant Kevin Smull, a police supervisor, arrived at the scene, he also

---

[3] Officer Tatum described at trial how drug users have often turned to these cigars as a concealed means of smoking marijuana. First, these individuals make an incision in the cigar and remove the tobacco. Second, they insert marijuana into the cigar and reseal it. In this way, marijuana users are able to covertly smoke a controlled substance in tobacco casing.

[4] The amount of marijuana officers found beneath the front passenger seat is not clear from the record.

spoke with Defendant Kirk.  During this short conversation, Kirk reaffirmed what he had told Officer Kelling and further specified that he carried the gun for protection. Officers then transported Kirk to the police station for further interrogation.

At the station, Detectives Errol Walker and Gilbert Proehl were assigned to question Defendant Kirk.  They gave Kirk a printed copy of his Miranda rights, which he signed.  Next, the officers elicited information from Kirk concerning his acquisition of the handgun, which turned out to be stolen.  Kirk explained that he acquired the handgun around February 10, 2006, at approximately 6:00 p.m., from a white male of approximately eighteen to twenty years of age.  In response to a series of questions posed by the detectives, Kirk stated that this man weighed around two hundred pounds, stood about six feet tall, had brown hair and a mustache.  Although Kirk did not know the man's name, he had seen him several times around a liquor store on Washington Street.  Indeed, the area between this liquor store and a vacuum cleaner shop is where Defendant Kirk described obtaining the gun.  As far as the transaction itself, Kirk observed that it was easy to obtain a gun off the street and admitted to trading one ounce of marijuana for the handgun.  Kirk explained that he wanted a gun for protection because there was a rumor that he was a law enforcement "snitch."

According to the officers, Defendant Kirk appeared relaxed throughout the interview.  He admitted the three bags of marijuana officers found in his pockets belonged to him and, indeed, explained that he acquired the marijuana from Piles, the robbery suspect.  Kirk, however, consistently denied intending to sell any drugs. Instead, he insisted the marijuana was for his own personal use.  As to the large amount of cash found on his person, Kirk admitted that he was not employed, but explained that the money came from the sale of stocks and bonds, which were a gift from his grandparents.

The version of events Kirk presented to a fellow inmate, however, substantially differed from what he told police.  Earnest Henry, Kirk's prison mate, testified at trial

that Kirk told him that he was on his way to sell one ounce of marijuana when police surrounded the van in which he was riding. Henry also testified that Kirk stated he was not using marijuana at the time of his arrest; rather, his drug of choice was ecstasy. According to Henry, Kirk had intended to use the gun in the van for protection, but not because of a dangerous rumor that he was a "snitch." To the contrary, Henry testified that Kirk carried a handgun because his $40,000 drug debt and reputation for making money caused him to fear retribution or robbery. Evidence at trial demonstrated that Kirk had previous experience trafficking drugs, as he had a 2005 conviction for possessing marijuana with the intent to distribute.[5] After a two-day trial, the petit jury convicted Defendant Kirk on all counts.

II.

We first consider Kirk's claim that the district court erred in denying his Motion to Sever his trial on Counts One and Two from his trial on Counts Three and Four. Because we reverse Kirk's conviction on Count Two on other grounds, Kirk cannot establish prejudice in regard to Count Two. See infra Part III.A. We, therefore, limit our severance analysis to the appropriateness of conducting a joint trial on Counts One, Three, and Four.

As Defendant Kirk's counsel acknowledged at oral argument, Kirk failed to renew his motion for separate trials at the close of the Government's case or at the close of all the evidence.[6] Consequently, we review only for plain error. See United States v. Carter, 481 F.3d 601, 605-06 (8th Cir. 2007); United States v. Frank, 354 F.3d 910, 920 (8th Cir. 2004). To succeed under this standard a defendant must

_____

[5] The Government was required to establish this predicate conviction to obtain a conviction on Count Five, which charged Kirk with being a felon in possession of a firearm.

[6] We appreciate counsel for Defendant Kirk's candor.

-6-

demonstrate that the trial court abused its discretion, thus prejudicing a defendant's substantial rights to such a degree that we discern an extraordinary reason to reverse. See Frank, 354 F.3d at 920.

Fed. R. Crim. P. 8(a) permits the Government to charge multiple counts in a single indictment, provided the offenses charged are (1) of the same or similar character, (2) are based on the same act or transaction, or (3) constitute parts of a common scheme or plan. Joinder is proper if any one of these three standards is met. Thus, Rule 8 generally favors joinder "to promote the efficient administration of justice." United States v. Taken Alive, 513 F.3d 899, 902 (8th Cir. 2008). Joint trials, on all counts of an indictment, are generally preferable for several reasons. First, separate trials necessarily involve a certain degree of "inconvenience and expense." United States v. Pherigo, 327 F.3d 690, 693 (8th Cir. 2003). Second, trying all counts together serves the important function of giving "the jury the best perspective on all of the evidence," thereby increasing the likelihood that the jury will reach "a correct outcome." Id. In this case, Defendant Kirk does not argue that the Government improperly joined Counts One, Three, and Four in a single indictment under Rule 8. Rather, he contends that a joint trial on these counts caused him to suffer "severe prejudice." Thus, Kirk calls into question the appropriateness of his joint trial under Fed. R. Crim. P. 14.

Rule 14 specifies that the district court may order separate trials if a joint trial would "prejudice a defendant or the government." The danger of prejudice to a defendant is inherent in any proceeding in which the Government tries a single defendant for multiple crimes. For example, a jury may improperly use evidence of one crime to infer that a defendant committed another offense. See United States v. Boyd, 180 F.3d 967, 981 (8th Cir. 1999). Indeed, a jury may cumulate evidence to find guilt on all crimes, whereas it would not have found guilt on any crime, if it had considered the offenses separately. See id. Only in an unusual case, however, will the prejudice resulting from a joint trial be substantial enough to outweigh the

"general efficiency of joinder." Taken Alive, 513 F.3d at 903. Accordingly, separate trials are required only where prejudice caused by a joint trial is "severe or compelling." United States v. Ruiz, 412 F.3d 871, 886 (8th Cir. 2005); Pherigo, 327 F.3d at 693. Severe prejudice occurs when a defendant is deprived of "an appreciable chance for an acquittal," a chance that defendant "would have had in a severed trial." Boyd, 180 F.3d at 982.

As a matter of course, Kirk cannot demonstrate that a joint trial on Counts One, Three, and Four caused him "severe" prejudice if the facts related to his commission of Count One would have been probative and admissible in a separate trial on Counts Three and Four. See United States v. Tyndall, 263 F.3d 848, 850-51 (8th Cir. 2001) (stating that when evidence of one crime is admissible in the trial of another crime no prejudice results from trying the two charges together); Boyd, 180 F.3d at 981-82 (same). To obtain a conviction on Counts Three and Four the Government was required to prove that Kirk knowingly or intentionally possessed marijuana with the intent to distribute that substance in April 2006. See 21 U.S.C. § 841(a)(1). Under Fed. R. Evid. 404(b), Kirk's prior bad act of trading marijuana for a handgun, in February 2006, was clearly relevant and admissible to prove such intent.[7] See United

---

[7] "Rule 404(b) provides that evidence of a prior bad act . . . is admissible if it is [1] relevant to a material issue, such as intent, and if it is [2] established by a preponderance of the evidence, [3] more probative than prejudicial, and [4] similar in kind and close in time to the charged offense." Cook, 454 F.3d at 941. Here, evidence of Kirk's prior exchange of marijuana for a handgun was relevant in regards to his intent to distribute the marijuana officers found in his possession. Kirk's acquisition of the handgun in this manner also spoke to his general preparation to engage in drug sales and also served to tie Kirk's possession of the handgun officers found in the van to his drug trafficking activities. In addition, Kirk's confession and the corroborating evidence found in the van clearly established Kirk's trade of marijuana for a handgun by a preponderance. As demonstrated by our analysis above, this evidence was more probative than prejudicial. Further, the crime of trading drugs for a gun is similar in kind to the crime of trading drugs for money, and these acts occurred close in time, *i.e.*, approximately two months apart.

States v. Cook, 454 F.3d 938, 941 (8th Cir. 2006). Kirk's recent drug trade and acquisition of a handgun tended to show that he intended, and had indeed prepared to, distribute the marijuana he possessed in April of that year. See United States v. Lucas, 521 F.3d 861, 864-65 (8th Cir. 2008); see also United States v. Sanders, 341 F.3d 809, 816 (8th Cir. 2003) ("Intent to distribute controlled substances may be proved by either direct evidence or circumstantial evidence."). As Sergeant Smull testified at trial, drug dealers often carry handguns for protection.

Moreover, we cannot say that the probative value of evidence related to Kirk's commission of Count I was substantially outweighed by the specter of unfair prejudice. See Lucas, 521 F.3d at 865; see also Fed. R. Evid. 403. In his interview with police, Kirk consistently denied intending to distribute the marijuana officers found on his person, and Kirk's counsel emphasized this fact at trial. To obtain a conviction on Counts Three and Four, however, the Government was required to prove that Kirk intended to distribute these drugs. Our practice has always been to "construe Rule 404(b) as a rule of inclusion" and we have "frequently upheld" the admission of prior drug crimes "in cases where the defendant denied committing the charged drug offense." Cook, 454 F.3d at 941. As such, Kirk cannot demonstrate that the admission of evidence related to his trading of marijuana for a gun in February 2006 – approximately two months before his arrest – was improper. See Lucas, 521 F.3d at 865 (stating that "prior acts need not be duplicates," they must simply be "sufficiently similar to support an inference of criminal intent").

Indeed, to find that the district court would have abused its discretion in admitting evidence related to Count One in a separate trial on Counts Three and Four we would have to conclude that the sole reason the Government sought to admit such evidence was to prove Kirk's general propensity to commit criminal acts. Id. (noting that we will reverse a district court's decision to admit evidence of other bad acts only where "such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts"). Here, that is clearly

not the case. Evidence of Kirk's recent drug trafficking and firearm possession went directly to Kirk's intended use of the marijuana and firearm he possessed in April 2006. See id. (noting that a defendant's participation in a similar drug transaction served "to establish intent or motive to commit the crime charged" and that the possession of a firearm on a previous occasion was also "relevant to show [that defendant's] knowledge and intent").

Accordingly, the district court did not abuse its "considerable discretion" in concluding that evidence of Kirk's prior bad act, as alleged in Count One, would be admissible in a separate trial on Counts Three and Four. Taken Alive, 513 F.3d at 903. Because the district court did not abuse its discretion in denying Kirk's motion for separate trials, Kirk cannot establish the first required element of plain error. See Frank, 354 F.3d at 920 (stating that to establish that a district court plainly erred in denying a motion for severance a defendant must first show the trial court abused its discretion). We, therefore, reject Defendant Kirk's first claim.

III.

We now turn to Kirk's claim that the Government's evidence was insufficient to support his conviction on Count One for distributing marijuana and on Count Two for using a firearm during and in relation to a drug trafficking offense. Both of these convictions are predicated on Kirk's confession to trading one ounce of marijuana for a handgun in February 2006. In light of the Supreme Court's holding in Watson v. United States, 128 S. Ct. 579 (2007), we reverse Defendant Kirk's conviction on Count Two for "use" of a firearm during and in relation to a drug trafficking offense. For the reasons stated below, we uphold Kirk's conviction on Count One for distribution of a controlled substance.

-10-

## A.

On appeal, Kirk argues that a defendant who exchanges drugs for a firearm does not "use" a firearm during and in relation to a drug trafficking offense under 18 U.S.C. § 924(c). Because Kirk did not raise this issue below, we review only for plain error. See Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). Under plain error review, a defendant must first demonstrate an error that is plain. See United States v. Alvizo-Trujillo, 521 F.3d 1015, 1018 (8th Cir. 2008). Even if a defendant demonstrates such an error, we may only take corrective action if the error not only prejudices the defendant's substantial rights, but also seriously affects the fairness, integrity, or public reputation of judicial proceedings. See id.

The error in this case is plain. See Johnson v. United States, 520 U.S. 461, 468 (1997) ("We . . . hold that . . . where the law at the time of trial was settled and clearly contrary to the law at the time of appeal . . . it is enough that an error be 'plain' at the time of appellate consideration."). Prior to the Supreme Court's decision in Watson, we held in United States v. Cannon, 88 F.3d 1495, 1509 (8th Cir. 1996) that trading drugs for a firearm constituted "use" of a firearm during and in relation to a drug trafficking offense. We found the factual disparity between *trading a firearm for drugs*, which constituted the "use" of a firearm under prior Supreme Court precedent, and *trading drugs for a firearm* to be "a distinction without a difference." Cannon, 88 F.3d at 1509; see also Smith v. United States, 508 U.S. 223, 236-37 (1993). The Supreme Court in Watson, however, recently disagreed, holding "that a person does not 'use' a firearm under § 924(c)(1)(A) when he receives it in trade for drugs." Watson, 128 S. Ct. at 586. As a result, Cannon is "no longer good law on this point." United States v. Pruett, 523 F.3d 863, 864 (8th Cir. 2008).

We have no difficulty concluding this error prejudiced Kirk's substantial rights. An error prejudices a defendant's substantial rights where there is a "reasonable

probability the defendant would have received a lighter sentence but for the error." Alvizo-Trujillo, 521 F.3d at 1018. But for our error in Cannon a jury would not have convicted Defendant Kirk on Count Two. In that case, Kirk would have undoubtedly received a lighter sentence. See 18 U.S.C. § 924(c)(1)(A) (mandating a five year mandatory additional sentence for those who use a firearm during and in relation to a federal drug trafficking offense). "[T]he fairness, integrity, and public reputation of judicial proceedings are seriously affected when a defendant must spend additional time in prison on account of an illegal sentence." United States v. Pirani, 406 F.3d 543, 553-54 (8th Cir. 2005). We, therefore, agree with both Defendant Kirk and the Government that Kirk's conviction on Count Two constitutes plain error. Accordingly, we reverse Kirk's conviction on that count.

## B.

We next consider Kirk's challenge to his conviction on Count One. Count One states a charge of distribution of a controlled substance based on Kirk's exchange of marijuana for a firearm. See 21 U.S.C. § 841(a)(1). The Government primarily relied on Defendant Kirk's confession, and his possession of a handgun, to prove that this transaction actually took place. Pointing to precedent holding that more than an uncorroborated confession is required to support a criminal conviction, Kirk challenges the sufficiency of the evidence supporting his conviction on Count One.[8] While it is certainly true that all elements of an offense "must be established by independent evidence or corroborated admissions," Kirk misconstrues the nature of the modern corroboration rule.[9] United States v. Eagle, 515 F.3d 794, 807 (8th Cir.

---

[8] Kirk makes the same contention in regard to Count Two. Because we have already reversed Kirk's conviction on Count Two, we consider Kirk's corroboration argument solely in relation to Count One.

[9] Long ago, the Supreme Court rejected a strict interpretation of the traditional corpus deliciti rule, which required the Government to "introduce independent evidence of every element of the crime." United States v. Corona-Garcia, 210 F.3d

-12-

2008). Because we determine the evidence the Government presented at trial sufficiently corroborated Kirk's admission that he traded one ounce of marijuana for a firearm in February 2006, we uphold Kirk's conviction on Count One.

We review the sufficiency of the evidence supporting a criminal conviction de novo. See United States v. Montano, 506 F.3d 1128, 1132 (8th Cir. 2007). The scope of our inquiry is limited to determining whether a reasonable jury could find the defendant guilty beyond a reasonable doubt, if it viewed all direct and circumstantial evidence, as well as all reasonable inferences drawn from that evidence, in the light most favorable to the Government. See United States v. Jimenez, 478 F.3d 929, 933 (8th Cir. 2007). Thus, our review of the evidence the Government presented at trial is "highly deferential." United States v. Mosby, 101 F.3d 1278, 1282 (8th Cir. 1996). We may not assess the credibility of witnesses or weigh conflicting evidence, as these tasks are exclusively for the jury. See United States v. Santana, 524 F.3d 851, 853 (8th Cir. 2008). Accordingly, we may reverse only if no rational jury could have found the essential elements of the crime beyond a reasonable doubt. See id. This standard applies even in cases where a confession dominates the government's proof at trial. See United States v. Singleterry, 29 F.3d 733, 739 (1st Cir. 1994) ("[W]here a full confession dominates the government's proof, it is fair to assume that a jury will interpret its duty to find guilt beyond a reasonable doubt to mean that it cannot simply accept a confession at face value.").

973, 978 (9th Cir. 2000); see also United States v. Trombley, 733 F.2d 35, 37 (6th Cir. 1984) ("It is generally recognized that corroboration in federal court does not entail independent proof of each element of the offense charged."). The Court now merely requires that "[a]ll elements of the offense . . . be established by independent evidence *or corroborated admissions*." Smith v. United States, 348 U.S. 147, 156 (1954) (emphasis added). The corpus delicti rule is, therefore, "not as unyielding as it seems." United States v. Deville, 278 F.3d 500, 506 (5th Cir. 2002).

The rule that an uncorroborated confession cannot, on its own, support a criminal conviction has its roots in a healthy skepticism of the accuracy of confessions. A long history of judicial experience has shown that, under the "strain of suspicion," individual self-interest, enmity, or personal frailty "may tinge or warp" the substance of a confession. United States v. Stabler, 490 F.2d 345, 350 (8th Cir. 1974) (quoting Wong Sun v. United States, 371 U.S. 471, 489 (1963)). Thus, out-of-court confessions are always suspect, to some degree, because they – like hearsay – possess "neither the compulsion of the oath nor the test of cross-examination." Id. Where a defendant's confessed crime involves physical damage to a person or property, a confession is sufficiently corroborated when the Government shows: (1) the damage did, in fact, occur, and (2) someone was criminally culpable for the injury. See United States v. Edwards, 159 F.3d 1117, 1123 (8th Cir. 1998); United States v. Delay, 500 F.2d 1360, 1363 (8th Cir. 1974). But where, as here, there is no tangible evidence of the crime confessed, the Government must introduce substantial independent evidence establishing the reliability or trustworthiness of the defendant's statement. See Rachlin v. United States, 723 F.2d 1373, 1379 (8th Cir. 1983); Whiteside v. United States, 346 F.2d 500, 505 (8th Cir. 1965).

One way in which the Government may establish a confession's trustworthiness is to offer "independent evidence" that bolsters the accuracy of the "confession itself," thereby proving the offense "through the statements of the accused." Stabler, 490 F.2d at 352 (quoting Smith v. United States, 348 U.S. 147, 156 (1954)). This corroborating evidence need not be sufficient, on its own, to establish the body of the offense beyond a reasonable doubt, or even by a preponderance of the evidence. Eagle, 515 F.3d at 807; Whiteside, 346 F.2d at 505. Rather, corroborative evidence is sufficient if it "merely fortifies the truth of the confession without independently establishing the crime charged." Wong Sun, 371 U.S. at 489. The Government thus bears the burden of offering enough evidence in support of the essential facts of a confession to support a jury's inference of their truth. See United States v. Maxwell, 363 F.3d 815, 818 (8th Cir. 2004) (citing Opper v. United States, 348 U.S. 84, 93

(1954)); United States v. Moore, 735 F.2d 289, 293 (8th Cir. 1984); see also 23 C.J.S. Criminal Law § 1291 ("[I]t is required merely that the prosecution produce independent evidence sufficiently supporting the essential admitted facts to justify a jury inference of the truth of the admitted facts or tending to establish the trustworthiness of the confession.").

Under this "trustworthiness approach" to the corroboration rule, the quantity and type of independent evidence necessary to corroborate a confession depends upon the facts of each case. 1 McCormick on Evidence § 148 (6th ed.); see United States v. Chimal, 976 F.2d 608, 611 (10th Cir. 1992). Corroborative facts may be of any kind, so long as they tend to produce confidence in the truth of the confession.[10] See 7 Wigmore on Evidence § 2071 (Chadbourn rev. 1978) (citing Opper, 348 U.S. at 92-93); see also id. (noting that courts have not attempted to formulate "detailed rules as to the nature" of corroborating evidence). Thus, circumstantial evidence may justify a jury's inference that a defendant's statement is true. See United States v. Clark, 57 F.3d 973, 976 (10th Cir. 1995); cf. Maxwell, 363 F.3d at 818 (explaining that the jury's "verdict may be based in whole or in part on circumstantial evidence").

In this case, we conclude the corroborating evidence the Government presented at trial was sufficient for a reasonable jury to conclude that Kirk's confession was trustworthy in all material respects. Our conclusion is bolstered by the nature and substance of Kirk's admissions, as well as Kirk's criminal history, and the physical evidence officers found on or near his person in April 2006. Viewed in the light most favorable to the Government, Kirk's description of his exchange of marijuana for a firearm was rather elaborate. We have previously held that the "detailed nature" of an admission lends credence to its content. Rachlin, 723 F.2d at 1379. Further, taken in the abstract, nothing about Kirk's "voluntary" statement that he traded drugs for a

---

[10] Indeed, we have previously held that "corroborating evidence need not be criminal in and of itself" to be persuasive. See United States v. Todd, 657 F.2d 212, 216 (8th Cir. 1981).

gun is "unusual or inherently untrustworthy." United States v. Wolf, 535 F.2d 476, 479 (8th Cir. 1976). As Detective Proehl testified at trial, this type of barter is fairly common. Thus, Kirk's "reasonable explanation" as to how he acquired the gun also supports the trustworthiness of his confession. See id.

Moreover, Defendant Kirk's criminal history and physical possession of both marijuana and a firearm at the time of his arrest significantly bolster the reliability of his confession. For instance, Kirk's "prior involvement" in drug trafficking, which most often involves the exchange of drugs for money, supports his confession to exchanging drugs for another thing of value: In this case, that thing of value just happened to be a handgun. United States v. Blake, 941 F.2d 334, 338 (5th Cir. 1991), *abrogated on other grounds by* Bailey v. United States, 516 U.S. 137 (1995); cf. also id. ("Evidence of other drug transactions corroborates Blake's admissions about drug trafficking.").

The credibility of Kirk's confession is further heightened by the recovery of telling pieces of "physical evidence" on or near his person at the time of his arrest. United States v. Carpenter, 963 F.2d 736, 741 (5th Cir. 1992). This physical evidence consisted of three small bags of marijuana in Kirk's pockets, the small bag of marijuana underneath Kirk's seat, the handgun in the van's right passenger door pocket, the cell phone in the van, and the small manual scale officers found on Hall. On a very basic level, the simple fact that Kirk had a handgun in his possession, approximately two months after Kirk admitted exchanging drugs for a handgun, adds significant credibility to his confession. Cf. Wolf, 535 F.2d at 478-79.

All of the items in the van taken together, and Kirk's separate admission to his prison mate Henry that he was on his way to sell marijuana at the time of his arrest, also support the inference that Kirk was involved in the drug trade. This, in turn, lends credence to Kirk's stated motive in obtaining a firearm – his need for protection. After all, drug trafficking is a dangerous business. See United States v. Smith, 914

-16-

F.2d 565, 567 (4th Cir. 1990) (noting that "drug dealing is a dangerous and often violent enterprise"). Kirk had good reason to fear for his safety, particularly if, as Kirk told Henry, he had a reputation for making money and had incurred an outstanding drug debt. Given Kirk's prior felony conviction, which made it impossible for him to buy a firearm legally, the odds are quite good that Kirk obtained the handgun in the clandestine manner he described. Indeed, the stolen nature of the handgun in Kirk's possession further validates his statement that he obtained the gun through illicit means, *i.e.*, by exchanging drugs for the gun.

Under the facts of this case, we conclude the Government presented substantial independent evidence in support of the reliability of Defendant Kirk's confession. Although this corroborative evidence "may not prove" that Kirk traded marijuana for a firearm in February 2006 it "goes far to confirm his admission that he did." United States v. Corona-Garcia, 210 F.3d 973, 979 (9th Cir. 2000). This is all the corroboration rule requires. See Wolf, 535 F.2d at 479 ("[T]he whole body of the evidence, including the statement in question, must be sufficient to convict."). Because a reasonable jury, viewing Kirk's admission in light of the corroborative evidence presented at trial, could find Kirk guilty beyond a reasonable doubt, we affirm Kirk's conviction on Count One.

For the foregoing reasons, we **affirm** Kirk's conviction on Count One, **reverse** Kirk's conviction on Count Two, and **remand** for resentencing.

_____