# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1638

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Ralph E. Taken Alive, Jr., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 13, 2007
Filed: January 29, 2008

_____

Before RILEY, COLLOTON, and BENTON, Circuit Judges.

_____

RILEY, Circuit Judge.

After a jury convicted Ralph E. Taken Alive, Jr. (Taken Alive) of voluntary manslaughter, in violation of 18 U.S.C. §§ 1112 and 1153; assault with a dangerous weapon, in violation of 18 U.S.C. §§ 1153 and 113(a)(3); and assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1153 and 113(a)(6), the district court[1] sentenced Taken Alive to 316 months' imprisonment. On appeal, Taken Alive contends (1) the district court erred in denying his motion to sever; (2) the district court also erred in denying his motion to dismiss counts one and two of the indictment; and

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

(3) insufficient evidence supports the conviction as to count one, voluntary manslaughter. We affirm.

## I. BACKGROUND

Beginning in late 2005 and continuing into early 2006, Taken Alive was involved in a sexual relationship with Susan Bears Heart (Bears Heart). In early February 2006, Bears Heart took an overnight trip with Justin Farrell (Farrell). Upon her return, Taken Alive confronted Bears Heart and asked if she and Farrell had sex. Bears Heart said no.

On February 9, 2006, Taken Alive, Bears Heart, Farrell, Farrell's brother Brian, and Jasper Iron Cloud (Iron Cloud) celebrated Iron Cloud's birthday, consuming a large quantity of alcohol. Taken Alive argued with Farrell about who was the better lover, in Bears Heart's presence. Farrell asked Bears Heart to sit on his lap while Taken Alive was present. Farrell asserts that after the party broke up, Taken Alive and Farrell were alone when Taken Alive, without provocation or warning, hit Farrell on the arms and face with a pipe or club. Eventually Farrell, bleeding profusely from his face, escaped, got in his car, and attempted to drive home. After a time, Farrell was forced to stop because he was dizzy. Farrell climbed into the car's backseat and dozed off.

A passerby noticed the car and called the police. Bureau of Indian Affairs Police Officer Jason Lawrence (Officer Lawrence) found Farrell in the car with a laceration and bump on his forehead and his clothes covered in blood. Farrell told Officer Lawrence that Taken Alive beat him up. Officer Lawrence called for an ambulance which transported Farrell to the hospital in Mobridge, South Dakota.

At the hospital, the treating nurse practitioner asked what had happened and Farrell reported Taken Alive beat him with a club. The nurse practitioner testified Farrell reported his pain as ten, on a scale of one to ten, and Farrell had several injuries

including multiple lacerations to the forehead, swelling around the orbit of the right eye, and an immobile right wrist. X-rays confirmed Farrell had a continuous left frontal skull fracture extending to the left frontal sinus and a fractured right wrist. At trial, Farrell testified the beating had impaired his sense of smell.

On March 9, 2006, Taken Alive was traveling to his uncle's funeral with his cousin Waldo Red Fox (Red Fox), Clayton Elling (Elling) and Elling's girlfriend, Deb Looking Back (Looking Back). The group acquired a half gallon of whiskey to drink during the trip from Mobridge, South Dakota, to Little Eagle, South Dakota. All four occupants were getting intoxicated. During the trip, Elling twice commented he had beaten up Taken Alive's father, who was also Red Fox's uncle.

Before reaching Little Eagle, the travelers stopped outside of Little Eagle so the men could urinate. All the men exited the car, leaving the heavily intoxicated Looking Back in the car. Red Fox confronted Elling about his comments, Elling pushed Red Fox, and Red Fox then punched Elling in the face. Taken Alive pushed Red Fox aside and challenged Elling to "see if you can do to me what . . . [you] did to my dad." Taken Alive and Elling began to wrestle near the car. As the fight continued, Red Fox returned to the car.

After five to ten minutes, Taken Alive returned to the car alone, entered the vehicle and drove away. Red Fox asked about Elling, and Taken Alive replied, "Shut the fuck up." Later, Red Fox asked Taken Alive if he had left Elling "in the water or if he knocked him out?" Taken Alive again replied, "Shut the fuck up." Elling was never seen alive again.

Later that day, an intoxicated Taken Alive went to the residence of his niece, Lexi Zephier (Zephier). Taken Alive proceeded to enter the residence, sat down, and watched television. Zephier testified Taken Alive was mumbling to himself and she

-3-

heard him say, "I fucking kicked his ass." Zephier later reported these comments to Red Fox, who reported the statements to the FBI.

Still later that day, Taken Alive drove to his cousin Bridgett Taken Alive's (Bridgett) home. Bridgett testified Taken Alive, while riding in a car later that same day, admitted beating up Looking Back's boyfriend (Elling) earlier that day. Under cross examination, Bridgett twice stated she was sure Taken Alive said he, not Red Fox, beat up Elling earlier that day.

On March 17, 2006, eight days after the funeral, Officer Lawrence was notified Elling was missing, and no one had heard from Elling for more than a week. A search ensued which was hindered by two snow storms. Elling's body was found on March 23, 2006.

Forensic pathologist Donald Habbe (Dr. Habbe) performed Elling's autopsy. Dr. Habbe testified Elling's death was consistent with someone who had been disabled from an assault and then died of hypothermia. Elling suffered twenty-three rib fractures, which occurred on all sides of his body. Some of the fractured ribs were displaced, protruding into the chest area. Dr. Habbe testified the fractures would be painful and would make breathing and moving very difficult. Dr. Habbe testified the injuries were consistent with blunt force trauma, such as being kicked repeatedly on both sides of the body.

Dr. Habbe also noted Elling had no alcohol in his system at the time of death. Dr. Habbe testified a person will metabolize the equivalent of one drink per hour. Thus, by reasonable inference, Elling remained alive long enough to metabolize all of the alcohol he had consumed.

Taken Alive was charged with the assault of Farrell, and with the assault and death of Elling. The two attacks were tried together, resulting in the jury verdicts of guilty on both incidents. Taken Alive appeals.

## II.    DISCUSSION

On appeal, Taken Alive contends (1) the district court erred in denying his motion to sever; (2) the district court erred in denying his motion to dismiss counts one and two of the indictment because of the variance between the government's causation theories for Elling's death; and (3) insufficient evidence supports the conviction as to count one.

### A.    Motion to Sever

"We reverse a denial of a motion to sever only when the defendant shows an abuse of discretion that resulted in severe prejudice." United States v. Crouch, 46 F.3d 871, 875 (8th Cir. 1995) (citation omitted). "Severe prejudice occurs when a defendant is deprived of an appreciable chance for an acquittal, a chance that [the defendant] would have had in a severed trial." United States v. Koskela, 86 F.3d 122, 126 (8th Cir. 1996) (citation omitted).

Taken Alive argues the district court should have severed counts one and two regarding the Elling assault and counts three and four on the Farrell assault, pursuant to Federal Rule of Criminal Procedure 8(a). Rule 8(a) applies to joinder of offenses and provides, "[t]he indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). The rule is broadly construed in favor of joinder to promote the efficient administration of justice. See United States v. Little Dog, 398 F.3d 1032, 1037 (8th Cir. 2005); United States v. Rock, 282 F.3d 548, 552 (8th Cir. 2002).

Here, the two charged offenses are similar in character and close in proximity and time. Both offenses are assaults in which the person assaulted was an acquaintance of Taken Alive and had been drinking with Taken Alive at the time of the assault. Further, the two offenses occurred fewer then thirty days apart in the same general vicinity. Based upon these factors, and the general efficiency of joinder, we find no abuse of discretion in the district court's denial of Taken Alive's motion to sever.

Taken Alive also argues that the district court's refusal to order separate trials was unfairly prejudicial and an abuse of discretion under Rule 14. "'Where evidence that a defendant had committed one crime would be probative and thus admissible at the defendant's separate trial for another crime, the defendant does not suffer any additional prejudice if the two crimes are tried together.'" United States v. Rogers, 732 F.2d 625, 630 (8th Cir. 1984) (quoting United States v. Dennis, 625 F.2d 782, 802 (8th Cir. 1980). Under Rule 404(b), the evidence of one assault would be admissible in the separate trial of the other assault if admitted to prove something other than character. See Fed. R. Evid. 404(b). In separate trials, admitting the other assault to show absence of mistake or accident or to show intent would not be an abuse of the trial court's discretion, and the separate juries would likely know about both assaults. For the same reasons that we found the district court did not abuse its considerable discretion in denying Taken Alive's motion to sever, we also find the district court did not abuse its discretion in denying Taken Alive's motion seeking separate trials for the two assaults. Taken Alive was not unfairly prejudiced.

## B.    Motion to Dismiss

Taken Alive asserts the district court erred in denying his motion to dismiss counts one and two of the indictment regarding Elling's cause of death because of government misconduct and grand jury error, contending that testimony before the grand jury suggested Elling's death was "a result of 'multiple blunt trauma injuries'" which "was totally at odds with the government's theory . . . at trial." Before the grand

jury, the government did present evidence Elling suffered "multiple blunt trauma injuries." However, the government's questioning also referenced Elling's cause of death, noting Elling "died as a result of, among other things, hypothermia . . . ." At trial, the government's testimonial evidence expressly indicated Elling died from hypothermia when disabled by severe blunt force injuries. The reference in the grand jury question and the testimony at trial as to the cause of death were consistent—death from hypothermia after suffering blunt force trauma. Thus, there was no government misconduct and no clear grand jury error.

Taken Alive's dismissal argument also lacks merit because the petit jury ultimately found Taken Alive guilty on both of the counts. Even if the alleged grand jury error occurred, this error is rendered harmless because it resulted in no prejudice to Taken Alive. See United States v. Ruiz, 446 F.3d 762, 769 (8th Cir. 2006) ("The petit jury's ultimate finding of guilt beyond a reasonable doubt renders the alleged grand jury error [insufficient evidence], if any, harmless.") (citation omitted); United States v. Sanders, 341 F.3d 809, 818 (8th Cir. 2003) ("Even if we were to assume there was prosecutorial misconduct during the grand jury proceedings, the petit jury's guilty verdict rendered those errors harmless.") (citation omitted); see also United States v. Exson, 328 F.3d 456, 459 (8th Cir. 2003) ("Dismissal due to errors in grand jury proceedings is appropriate only if the defendant shows actual prejudice[.]") (citation omitted).

### C.    Sufficiency of the Evidence

Taken Alive asserts the government never proved Taken Alive committed manslaughter. Voluntary manslaughter "is the unlawful killing of a human being without malice . . . . Upon a sudden quarrel or heat of passion." 18 U.S.C. § 1112. Taken Alive contends (1) no one witnessed Taken Alive beat up Elling and many other possible causes exist for Elling's injuries; (2) no evidence explains what happened to Elling between the date of the altercation and the discovery of Elling's body weeks

later; and (3) the location of the fight and the location where Elling's body was found were inexplicably too far apart.

We review de novo the sufficiency of the evidence to sustain a conviction, examining the evidence in the light most favorable to the jury verdict and giving the verdict the benefit of all reasonable inferences. See United States v. Wintermute, 443 F.3d 993, 1003 (8th Cir. 2006). "We will reverse the jury verdict only if no reasonable jury could have found [Taken Alive] guilty." United States v. Montano, 506 F.3d 1128, 1132 (8th Cir. 2007) (citation omitted).

The jury heard Red Fox's testimony (1) Taken Alive was fighting with Elling when Elling was last seen alive; (2) Taken Alive returned to the vehicle alone and drove off; and (3) Taken Alive profanely dismissed Red Fox's inquiries as to Elling and his condition and whereabouts. Further, the jury heard Taken Alive's niece testify Taken Alive mumbled "I fucking kicked his ass" the day Elling disappeared. The jury also heard Taken Alive's cousin testify Taken Alive admitted to beating up Elling earlier that day.

Along with the testimony regarding Taken Alive's beating of Elling on the last day Elling was seen alive, the jury also heard the forensic pathologist's testimony regarding the state of Elling's injuries—injuries consistent with a severe beating by kicking making it nearly impossible for Elling to move or breathe and thereby unable to seek assistance, ultimately leading to Elling's death from exposure. Thus, the jury heard evidence of Taken Alive's assault of Elling which resulted directly in Elling's death.

As to the location, Red Fox was not clear where the assault of Elling took place. However, one of the reasonably possible locations was near where Elling's body was discovered. The jury resolved this factual dispute and inconsistency against Taken Alive.

We conclude Taken Alive's conviction for manslaughter is supported by more than sufficient evidence.

## III.    CONCLUSION

For the foregoing reasons, we affirm Taken Alive's conviction.

_____