# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1818

_____

| | | |
|---|---|---|
| United States of  America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Robert L. Erickson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  May 11, 2010
Filed:  July 12, 2010

_____

Before WOLLMAN, MELLOY, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Robert L. Erickson was charged with multiple counts of assault with a dangerous weapon and assault resulting in serious bodily injury, in violation of 18 U.S.C. § 1153.  Erickson was convicted and he now appeals, arguing that the district court[1] erred in admitting hearsay testimony and in denying his motion to sever one of the assault charges.  We affirm.

_____

[1]The Honorable Karen E. Schreier, Chief Judge, United States District Court for the District of South Dakota.

I.

The charges in this case stemmed from two separate incidents that occurred at Sherry Erickson's[2] residence in Mission, South Dakota, between approximately November or December 2007 and January 2, 2008. On an evening in November or December 2007, Robert Erickson and his girlfriend, Kendra Small Bear, were drinking at Sherry Erickson's residence when they got into an argument. Small Bear became tired of arguing, so she went outside and began walking down an alley that was adjacent to the residence. Erickson followed her and a physical altercation ensued, in the course of which Erickson pulled out a knife and poked Small Bear in the ear and stabbed her in the leg. Erickson and Small Bear returned to the residence and Erickson apologized for stabbing her. Small Bear wrapped her leg wound with gauze and a bandage but did not seek medical treatment.

On January 1, 2008, Erickson attended a party at Sherry Erickson's residence at which some eight people had gathered and were drinking heavily throughout the night. Most of the individuals at the party were intoxicated, with the exception of Samantha Kitteaux, Erickson's cousin, who, because of her pregnancy, was not drinking. Erickson became increasingly agitated as the evening wore on, expressing anger that someone had stolen liquor from him and claiming that members of the group wanted to "jump him." At about 3:00 a.m. on January 2, Erickson became involved in an argument with Anthony Kitteaux. Erickson walked out of the residence and onto a front porch area. Anthony Kitteaux followed after him to see what Erickson was doing. In order to step outside, the parties had to pull back a blanket that had been hung over the doorway to provide additional insulation. As Anthony Kitteaux pulled back the blanket to look outside, Erickson slashed him across the face with a knife, leaving a large flap of skin hanging from Kitteaux's

_____

[2]Sherry Erickson is the appellant's aunt, and many of the witnesses in this case are related to one another. Throughout this opinion we use the parties' full names when necessary to avoid confusion.

cheek. Kitteaux yelled, "ow, that mother f---er cut me" as he retreated back inside. Eli Antoine, who had been sitting inside, went to the door, whereupon Erickson swung the knife again, slashing Antoine across the palm of his left hand and lacerating the tendons and nerves connecting several of his fingers.

Erickson fled the residence on foot and several of the individuals who had been present at the party chased after him. Samantha Kitteaux and another individual, Frank Swalley, remained behind and made two 911 emergency calls as they attempted to help with the victims' wounds. During the second 911 call, Frank Swalley got on the phone and identified Erickson as the assailant. After arriving on the scene and briefly speaking with the witnesses, the police began searching for Erickson and apprehended him within walking distance of the residence. Erickson was arrested and taken to the local jail, where the officers took pictures of what appeared to be blood on his hands.

The government charged Erickson with three counts of assault with a deadly weapon—one for the attack on Small Bear and two others for the incident in which he assaulted Anthony Kitteaux and Eli Antoine. In connection with the latter incident, the government also charged Erickson with two counts of assault resulting in serious bodily injury. The district court permitted the government to join all the offenses in a single trial and denied Erickson's motion to sever the assault charge involving Small Bear.

At trial, Small Bear testified about the first assault, and a number of individuals who had been present at the party on January 1, 2008, testified about the second incident. Samantha Kitteaux was the government's principal witness. She testified that, unlike the others, she had not been drinking and had been in a back bedroom watching television when she heard loud voices. She testified that she came into the living area in time to see Erickson walk outside and Anthony Kitteaux follow him through the door. Although she testified that she did not see a knife, Samantha

Kitteaux saw Erickson swing and hit Anthony Kitteaux and she observed immediately afterward that his face had been cut. She also testified that she heard Anthony Kitteaux exclaim, "ow, that mother f---er cut me," and observed Eli Antoine go to the door, exclaim that "he has a knife," and back away with his hand bleeding. According to Samantha Kitteaux's testimony, Erickson was the only person standing on the other side of the door who could have caused the injuries. Samantha Kitteaux also testified that Erickson called her later from jail and apologized for cutting Anthony and Eli.

Isaiah Swalley, another individual who had been present at the party, testified about Erickson's angry demeanor throughout the evening and also testified that he had observed the assault. He testified that from his point of view, it looked like Erickson punched Anthony Kitteaux and that Kitteaux immediately grabbed his cheek. Other witnesses, however, expressed unwillingness to testify against a family member and claimed that they could not remember what had happened. Neither Anthony Kitteaux nor Eli Antoine was able to recall details about the assault. Anthony Kitteaux testified that Erickson had become angry at the party and was trying to fight everyone, and that he later called from jail and apologized for cutting Kitteaux's cheek. Anthony Kitteaux stated, however, that he could not identify the individual who had cut him. Frank Swalley testified that Erickson became agitated during the evening and was hollering about someone trying to jump him. But Frank Swalley had no recollection of the stabbing or making a 911 call. Rather, he claimed that he had passed out from drinking and was awakened only after the assaults had already taken place. He testified that after he woke up he saw blood gushing from Eli Antoine's wound and used his belt as a makeshift tourniquet to stop the bleeding.

The government introduced testimony from the police officer who had arrested Erickson and also introduced photographs showing what appeared to be blood on Erickson's hands. For impeachment purposes, the government introduced testimony from a special agent with the Federal Bureau of Investigation who had interviewed Anthony Kitteaux and Eli Antoine shortly after the attack. According to the agent,

both victims had initially identified Erickson as the assailant. Over defense counsel's hearsay objection, the government introduced testimony from a 911 dispatcher that an individual named "Frankie"—recognized now as Frank Swalley—had identified Erickson as the attacker. The district court overruled the objection, later clarifying that the testimony was admissible under the excited utterance exception to the hearsay rule.

The jury found Erickson guilty of all four counts related to his assaults of Anthony Kitteaux and Eli Antoine. With respect to the assault of Small Bear, the jury found Erickson not guilty of assault with a dangerous weapon, but guilty of the lesser included offense of simple assault.

## II.

Erickson first argues that the district court erred in permitting the 911 dispatcher to testify about Frank Swalley's out-of-court statement identifying Erickson as the assailant. The government responds that the statement was properly admitted as an excited utterance.

We review the district court's evidentiary rulings for abuse of discretion. United States v. James, 564 F.3d 960, 963 (8th Cir. 2009). Under Federal Rule of Evidence 803(2), an out-of-court statement is admissible as an excited utterance if the statement "relat[es] to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The government argues that Frank Swalley's identification of the assailant while he was still experiencing trauma from the aftermath of a knife assault falls within this rule. Certainly Swalley could have been startled by awakening to the chaos that erupted after the assault, with a group of people chasing Erickson and others attempting to respond to a medical emergency. Swalley's testimony also indicated that the event was traumatic, as he saw blood gushing from Eli Antoine's hand and attempted to stop

the bleeding. And Swalley's statement to the 911 dispatcher identifying Erickson was related to the startling event of the assault. The problem with the government's argument, however, is that the trial testimony did not make it clear how Swalley obtained the information that he related over the phone. The trial testimony indicated that Frank Swalley had passed out from drinking and was awakened only after the attack had already occurred. As related above, Frank Swalley testified that he had no recollection of the 911 call. The lack of detail in the trial record thus makes his statement difficult to evaluate because it is not clear how he came to the conclusion that Erickson had committed the crime.

Erickson argues that this case is analogous to Meder v. Everest & Jennings, Inc., 637 F.2d 1182 (8th Cir. 1981), in which we held that the trial court erred in admitting a police officer's testimony about a statement in his police report because it was uncertain who had made the statement to the officer. The statement related to the cause of an accident, and the defendant argued that it was admissible as an excited utterance. Id. at 1186. We held, however, that because the officer could not say who had made the statement, it was "impossible for us to determine whether the maker of the statement was an eyewitness of what occurred at the scene," and thus it was improper for the district court to admit the statement as an excited utterance. Id. Erickson contends that we face a similar difficulty in evaluating the statement at issue here. The government counters that this case is more like Greene v. B.F. Goodrich Avionics Sys., Inc., 409 F.3d 784 (6th Cir. 2005), in which the court considered the admissibility of a helicopter pilot's exclamation that "I think my gyro just quit" made immediately before a fatal crash. In concluding that the statement was admissible as an excited utterance, the court rejected the argument that the pilot needed to have physically observed the failure of the instrument. Id. at 790-91. Rather, the court determined that the pilot could have made a logical inference based on his training and observation of the instrument control panel. Id. The government likewise contends that, even if Frank Swalley did not observe the assault firsthand, he could have made a reasonable inference based on everything that he saw and heard following the attack.

Neither of the cases cited by the parties involved the exact situation we face here. In Meder, the declarant's identity was unknown, whereas both Erickson and the government acknowledge that the statement to the 911 dispatcher came from Frank Swalley. The question is not who made the statement, but instead how the information was obtained, which distinguishes the present case from Greene, in which it was obvious that the pilot's inference about the failure of his gyroscope was based on his observation of the instrument panel and the aircraft's behavior. In this case there are a number of conceivable explanations for Frank Swalley's belief that Erickson was the assailant—for example, someone who witnessed the attack could have told him; he might have observed people leaving the residence to chase after Erickson; or he could have based his conclusion on his earlier observation of Erickson's erratic, aggressive behavior. Because there is no way to identify the basis of the statement with any certainty, however, it is problematic whether it was properly admitted as an excited utterance.

We are nevertheless convinced that any error in admitting the statement was harmless given the overwhelming evidence against Erickson. See Fed. R. Crim. P. 52(a); see also United States v. Stenger, 605 F.3d 492, 503 (8th Cir. 2010) (holding that admission of hearsay does not constitute reversible error when the evidence did not affect the defendant's substantial rights and had at most only a very slight influence on the verdict). As recounted above, two eyewitnesses—Samantha Kitteaux and Isaiah Swalley—described the series of events in which Anthony Kitteaux walked up to the door and was slashed across the face by Erickson. Neither witness testified to seeing the knife, but the evidence left no doubt that the victims suffered knife wounds and that Erickson had caused the injuries. Although several of the other witnesses expressed unwillingness to testify against a family member, they still corroborated the basic facts that Erickson attended the party, became intoxicated and angry, and fled the scene after the assault. Moreover, when the police apprehended Erickson, he had what appeared to be blood on his hands, despite the lack of any apparent injury. Finally, Samantha Kitteaux and Anthony Kitteaux both testified that

-7-

Erickson called from jail and apologized for causing the injuries. Accordingly, we conclude that any error in admitting Frank Swalley's out-of-court statement was harmless.

III.

Erickson also argues that the charge stemming from the assault on Small Bear was improperly joined with the other charges and that the district court erred in denying his motion to sever.

We review *de novo* the initial question whether offenses were properly joined. United States v. McCarther, 596 F.3d 438, 441 (8th Cir. 2010). Offenses may be properly joined if the offenses are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). We construe this rule broadly in favor of joinder to promote judicial efficiency. McCarther, 596 F.3d at 441-42. The offenses joined in this case were similar in that they all involved knife assaults by Erickson after he had been drinking with other individuals at Sherry Erickson's residence. Small Bear testified that Erickson had assaulted her in November or December of 2007, meaning that the joined crimes occurred at most approximately two months apart. Given the similarities between the offenses and their spacial and temporal proximity to one another, as well as the presumption in favor of the efficiency achieved through joinder, we conclude that the offenses were properly joined.

Even when offenses have been properly joined, however, the district court retains the discretion to order separate trials if it appears that a defendant will otherwise be unduly prejudiced. See Fed. R. Crim. P. 14(a). We review a district court's denial of a motion to sever for abuse of discretion and will reverse only when the denial of severance severely prejudiced the defendant. McCarther, 596 F.3d at 442. We have held that a defendant cannot show prejudice when evidence of the

-8-

joined offense would be properly admissible in a separate trial for the other crime. See United States v. Taken Alive, 513 F.3d 899, 903 (8th Cir. 2008).

The government maintains that evidence of each of the knife assaults would have been admissible in a separate trial on the other offenses to establish Erickson's intent, among other things. See Fed. R. Evid. 404(b) (stating that evidence of other crimes, though not admissible to prove the defendant's criminal character, may be admissible to show intent, knowledge, identity, or absence of mistake); see also James, 564 F.3d at 963 (explaining that Rule 404(b) is a rule of inclusion rather than exclusion). Erickson argues that the evidence of other assaults would not have been admissible to show intent because he did not contest the issue of intent at trial, citing United States v. LeCompte, 99 F.3d 274 (8th Cir. 1996), in which we held that evidence of the defendant's prior sexual abuse of a minor was not admissible to show his intent with respect to a charge of abusive sexual contact with a different minor. We observed that intent was not a serious issue in the case because if the jury believed that the defendant had engaged in the sexual conduct for which he was charged, it could "hardly doubt that [the defendant] intended criminal sexual contact." Id. at 279. We further stated that such seriously prejudicial evidence should not be admitted to prove a nominally contested issue. Id.

Unlike the sexual conduct at issue in LeCompte, an inference of intent does not automatically follow from the fact that a victim sustains a knife injury during a party at which nearly everyone is intoxicated. Thus, we do not agree with Erickson's assertion that his intent was merely a nominal issue at trial. Moreover, our post-LeCompte holdings have clarified that the government generally has wide latitude in deciding how to present its case. See United States v. Walker, 428 F.3d 1165, 1169-70 (8th Cir. 2005). "The mere fact that [a defendant] did not actively dispute motive or intent [does not] preclude the government from offering otherwise admissible evidence as to these factors." Id. at 1170. Evidence of other recent knife assaults sharing a number of common characteristics would likely have been admissible in a

separate trial, and Erickson was therefore not prejudiced by the district court's denial of severance.

This case is also similar to several other cases in which we have affirmed the district court's denial of a severance motion. In United States v. Steele, for example, we affirmed the district court's refusal to sever a charge of assaulting a federal officer from several other assault charges involving a different victim. 550 F.3d 693, 702 (8th Cir. 2008). The assault that the defendant sought to sever occurred within four months of the other assaults, and we held that the district court did not abuse its discretion in denying severance because, "[h]ad separate trials been held, the evidence of each alleged assault would likely have been admissible under Rule 404(b) in the other trial." We reached a similar conclusion in Taken Alive, affirming the district court's denial of severance for separate assaults that occurred approximately one month apart and involved separate victims. 513 F.3d at 903. As here, both offenses were "assaults in which the person assaulted was an acquaintance of [the defendant] and had been drinking with [the defendant] at the time of the assault." Id. We held that "admitting the other assault to show absence of mistake or accident or to show intent would not be an abuse of the trial court's discretion, and the separate juries would likely know about both assaults." Id. Accordingly, we conclude that the district court did not abuse its discretion in denying Erickson's motion to sever in this case.[3]

---

[3]We also note that Erickson's acquittal on the charge of assault with a dangerous weapon stemming from the incident with Small Bear suggests that the jury was able to consider separately each charge.

IV.

The judgment is affirmed.

_____