# United States Court of Appeals

### For the Eighth Circuit

_____

No. 15-3731

_____

United States of America

*Plaintiff - Appellee*

v.

Rahmad Lashad Geddes

*Defendant - Appellant*

_____

No. 16-3898

_____

United States of America

*Plaintiff - Appellee*

v.

Rahmad Lashad Geddes

*Defendant - Appellant*

_____

Appeals from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 21, 2016
Filed: January 3, 2017

_____

Before MURPHY, GRUENDER, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

A jury convicted Rahmad Lashad Geddes of one count of aiding and abetting sex trafficking by force, fraud, or coercion; one count of aiding and abetting transportation with intent to engage in prostitution; and one count of being an armed career criminal in possession of a firearm. Geddes appeals a number of pre-trial, trial, and post-trial motions on which the district court[1] ruled in favor of the prosecution. We affirm.

## I.

On January 6, 2014, Geddes traveled from Eau Claire, Wisconsin to Duluth, Minnesota with a woman named Grace Schreiner. Schreiner was under the impression that they were traveling to St. Paul, rather than Duluth, to sell drugs as they had done in the past. After a brief sojourn in St. Paul, they drove to Superior, Wisconsin where they checked into a motel and had sex. Thereafter, the pair drove to Duluth, and Geddes picked up cocaine from a supplier. Throughout the remainder of this trip, Geddes was actively involved in selling cocaine, and Schreiner witnessed Geddes meet another woman to exchange cocaine for two handguns.

On January 7, they drove to Rochester, Minnesota to pick up Geddes's friend, Shannon Funk. On the return trip, Funk and Geddes proposed that Schreiner engage in prostitution upon arriving in Duluth. According to Schreiner's trial testimony, she felt she had to comply because she would not be able to return home if she refused.

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

-2-

They checked into another Duluth hotel, and Geddes began cutting the quantity of cocaine he purchased into distribution amounts. Geddes and Funk created an advertisement on a website called Backpage.com with pictures of Schreiner and a telephone number to call, and Funk gave Schreiner a cellular phone on which to receive calls. This process culminated in Schreiner completing two transactions as a prostitute. In the first, she was paid to perform oral sex on one man at the hotel. Although the recipient was told this act would cost $120, he only left $20 on the table in the room. As a result of this discrepancy, Geddes slapped Schreiner four times in the face. The second act consisted of an encounter where a man came to the hotel and paid $20 but then left shortly thereafter without any sexual activity occurring.

Throughout the trip, Geddes refused Schreiner's requests to return home. The two finally returned to Eau Claire on January 14, 2014. Once Geddes left, Schreiner told her pastor what had occurred, and he called the police. Geddes was indicted on three counts: (1) sex trafficking by force, fraud, or coercion in violation of 18 U.S.C. § 1591; (2) transportation to engage in prostitution in violation of 18 U.S.C. § 2421; and (3) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). A superseding indictment was later returned that was the same as to Counts 1 and 2, but Count 3 was changed to charge Geddes as an armed career criminal in possession of a firearm.

Before trial, Geddes filed three motions relevant to this appeal. First, he moved to sever the sex trafficking counts from the firearm count, arguing that the two instances arose from different facts and would depend on different witnesses. The district court denied this motion. Second, Geddes moved to exclude testimony from the victim of his earlier conviction for terroristic threats. The government sought to introduce this evidence as being relevant to show Geddes's intent on Count 1, and Geddes opposed its introduction as merely being propensity evidence. The district court allowed the evidence to be presented subject to a number of limiting instructions. Finally, Geddes sought to exclude the government's proposed expert

witness on the basis that her testimony would not help the jury and would be overbroad. The district court also denied this motion, finding that Eighth Circuit precedent allowed expert testimony on the operation of sex trafficking rings. Geddes renewed all of these motions during trial, and the district court overruled them.

After a three-day trial, the jury found Geddes guilty of all three counts, and the district court sentenced him to 282 months imprisonment. He brought this appeal challenging all three of the above rulings and the sufficiency of the evidence to sustain a conviction on Counts 1 and 2.

II.

A.

The first issue on appeal is whether the district court erred in denying the motion to sever the sex trafficking counts from the firearm count. This Court reviews the denial of a motion to sever properly joined counts for an abuse of discretion. United States v. Erickson, 610 F.3d 1049, 1055 (8th Cir. 2010). Two or more offenses may be joined for trial "if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). "If the joinder of offenses . . . or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts . . . ." Fed. R. Crim. P. 14(a).

Given the district court's discretion under Rule 14, "we will not reverse unless the defendant shows an abuse of discretion resulting in severe prejudice." United States v. Steele, 550 F.3d 693, 702 (8th Cir. 2008). "Severe prejudice occurs when a defendant is deprived of an appreciable chance for an acquittal, a chance that [the defendant] would have had in a severed trial." United States v. Scott, 732 F.3d 910,

916 (8th Cir. 2013) (alteration in original) (quoting United States v. Taken Alive, 513 F.3d 899, 902 (8th Cir. 2008)) (internal quotation marks omitted). "[A] defendant cannot show prejudice when evidence of the joined offense would be properly admissible in a separate trial for the other crime." Erickson, 610 F.3d at 1055. The evidence may be admissible because it "completes the story of the crime, or as evidence of a prior bad act of a similar nature admissible under Rule 404(b) of the Federal Rules of Evidence." United States v. Brown, 653 F.3d 656, 662 (8th Cir. 2011) (citation omitted); see also United States v. Orozco-Rodriguez, 220 F.3d 940, 942 (8th Cir. 2000) (allowing testimony "because it related to the background and circumstances of the charged crimes [and] complete[d] the story of the crime or explain[ed] the relationship of parties or the circumstances surrounding a particular event" (internal quotation marks omitted)).

We find no abuse of discretion in the denial of severance of the firearm possession charge from the sex trafficking charges. All three counts involved a series of events that occurred between January 6 and January 14, 2014. The sex trafficking charges asserted, in short, that Geddes forced Schreiner to engage in prostitution during a trip to Duluth taken during the above dates. The firearm charge focused on a transaction witnessed by Schreiner during that trip in which Geddes exchanged cocaine for two handguns. Therefore, because Schreiner's testimony provided evidence on the entirety of the trip, "it is virtually certain" that her testimony would be admissible "as evidence that completes the story of the crime." See Brown, 653 F.3d at 662 (internal quotation marks omitted).

Geddes's primary argument on this point is that the jury was unable to compartmentalize the evidence related to the different counts. Severe prejudice can also occur where defendants "demonstrat[e] that their defense is irreconcilable with a codefendant's defense, or the jury will be unable to properly compartmentalize the evidence as it relates to the separate defendants." United States v. Young, 753 F.3d 757, 777 (8th Cir. 2014), cert. denied sub nom. Mock v. United States, 135 S. Ct.

1005 (2015). On the other hand, where "there [is] little possibility the jury was confused over which evidence related to which count," no prejudice occurs to a defendant's right to a fair trial. United States v. Wilkens, 742 F.3d 354, 359 (8th Cir. 2014). The facts in this case are relatively straightforward, and this was not a case presenting a multitude of different defendants and charges. Geddes has failed to meet his burden of showing severe prejudice.

B.

Geddes next argues the district court erred in allowing the testimony of Nicole Meyer, his former girlfriend. During the trial, the prosecution presented Meyer's testimony concerning an incident in 2010 where Meyer confronted Geddes about a text message on his cellular phone. According to her testimony, the argument escalated and Geddes physically assaulted and threatened to kill her. Prior to Meyer taking the stand, the district court instructed the jurors that they should consider the evidence only if they determine the testimony to be more likely true than not. Further, the jury was instructed that if it found that the evidence met that standard, the jury could consider the testimony only on the issue of whether Geddes intended to force or coerce Schreiner to engage in prostitution. Finally, the court explicitly told the jury that it may not use the testimony as evidence Geddes committed the crime charged in the present case.

"We review the district court's admission of evidence of past crimes under Federal Rule of Evidence 404(b) for abuse of discretion, and we will not reverse unless the evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." United States v. Williams, 796 F.3d 951, 958 (8th Cir. 2015) (quoting United States v. Bassett, 762 F.3d 681, 687 (8th Cir. 2014)) (internal quotation marks omitted), cert. denied, 136 S. Ct. 1450 (2016). Rule 404(b)(1) states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion

the person acted in accordance with the character." However, "[t]his evidence may be admissible for another purpose, such as proving motive, . . . intent, . . . absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). This rule is one "of inclusion rather than exclusion and admits evidence of other crimes or acts relevant to any issue in the trial, unless it tends to prove only criminal disposition." United States v. Oaks, 606 F.3d 530, 538 (8th Cir. 2010) (quoting United States v. Simon, 767 F.2d 524, 526 (8th Cir. 1985)) (internal quotation marks omitted).

Our circuit "employ[s] a four-part test to determine whether a district court abused its discretion in admitting 404(b) evidence." Williams, 796 F.3d at 958. Such evidence is admissible if "(1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value." Id. at 959 (quoting United States v. Robinson, 639 F.3d 489, 494 (8th Cir. 2011)) (internal quotation marks omitted). The Government sought to introduce this testimony as evidence of Geddes's intent to coerce or force Schreiner to engage in prostitution, and the district court allowed the brief testimony, subject to its limiting instructions.

Geddes contends that the testimony fails to meet the first, second, and fourth prongs from the test set out above. We disagree and address each factor in turn. To convict Geddes on Count 1, the prosecution was required to prove that Geddes acted "knowing[ly] or in reckless disregard of the fact that means of force, threats of force, fraud, coercion, or any combination of such means would be used to cause [Schreiner] to engage in a commercial sex act." See United States v. Campbell, 764 F.3d 880, 889 (8th Cir. 2014) (internal quotation marks omitted), cert. denied, 135 S. Ct. 1514 (2015); 18 U.S.C. § 1591(a)(1). On Count 2, the prosecution was tasked with proving that Geddes "knowingly transport[ed] [Schreiner] in interstate or foreign commerce . . . with intent that [she] engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2421(a).

"Both his intent and his knowledge were thus called into question." Campbell, 764 F.3d at 889 (quoting United States v. Jarrett, 956 F.2d 864, 867 (8th Cir. 1992)) (internal quotation marks omitted). Where knowledge and intent are material issues at trial, the prosecution is generally allowed to present "evidence of other acts tending to establish [knowledge and intent]." United States v. Johnson, 934 F.2d 936, 939 (8th Cir. 1991) (quoting United States v. Miller, 725 F.2d 462, 466 (8th Cir. 1984)) (internal quotation marks omitted). Therefore, Meyer's testimony about Geddes's earlier use of force against her was relevant to the issue of Geddes's intent, which was a material issue at trial. The first factor is satisfied.

Next, the testimony was similar in kind and not overly remote in time to the crime charged. Meyer's trial testimony concerned an event in 2010 where Geddes physically abused and threatened her. "On the issue of similarity, our test merely requires that the prior acts are 'sufficiently similar to support an inference of criminal intent.'" Williams, 796 F.3d at 959 (quoting United States v. Walker, 470 F.3d 1271, 1275 (8th Cir. 2006)). Here, the events described by Meyer were sufficiently similar in substance to Schreiner's testimony about Geddes's threatening and physically abusive actions to satisfy this test. As for the time between the prior bad act and the charged offenses, we conclude that the passage of four years was insufficient to diminish the probative value of the evidence. See id. at 959-60 (allowing evidence of prior bad acts that occurred more than ten years before the charged offense).

Finally, the probative value of Meyer's testimony was not substantially outweighed by any prejudicial effect. "Though all Rule 404(b) evidence is inherently prejudicial, the test under Rule 403 is whether its probative value is *substantially* outweighed by the danger of *unfair* prejudice." Id. at 960 (quoting United States v. Cook, 454 F.3d 938, 941 (8th Cir. 2006)) (internal quotation marks omitted). Meyer's testimony on this issue is confined to twenty lines of the trial transcript, and she spoke solely about the fact that Geddes had threatened her and had been physically abusive. Trial Tr. vol. 4, 842:15-843:9, ECF No. 89. This testimony was

probative on the issue of Geddes's intent, and, given the extensive limiting instructions placed on the jury's use of the testimony, we find the danger of unfair prejudice to be minimal. See United States v. Cockerham, 417 F.3d 919, 921 (8th Cir. 2005) ("[A] proper limiting instruction serves as a protection against unfair prejudice.").

The district court did not abuse its discretion in allowing Meyer's testimony at trial.

C.

Geddes contends that the district court erred in allowing the prosecution to present expert testimony from Ann Quinn, a special agent with the Minnesota Bureau of Criminal Apprehension. Agent Quinn is a member of a human trafficking task force, and has done work in this area for roughly fourteen years. At trial, Agent Quinn testified from her training and experience on the operation of sex trafficking rings and the terms used therein. "We review the district court's decision to admit expert testimony for abuse of discretion, according it substantial deference." United States v. Bailey, 571 F.3d 791, 803 (8th Cir. 2009). "Federal Rule of Evidence 702 provides that an expert may testify if it 'will assist the trier of fact to understand the evidence or determine a fact in issue.'" Id. (quoting Fed. R. Evid. 702). Under Supreme Court precedent, "the [district] judge is to act as a gatekeeper in determining whether the proposed expert's testimony both is relevant and rests upon a reliable foundation." United States v. Evans, 272 F.3d 1069, 1094 (8th Cir. 2001).

Geddes assigns two points of error to this issue, and we disagree with both. First, he argues that the district court's decision not to hold a Daubert hearing was an abuse of discretion as a matter of law; however, as we have stated, "[t]here is no requirement that the [d]istrict [c]ourt always hold a Daubert hearing prior to qualifying an expert witness under Federal Rule of Evidence 702." Id. Next, he

contends that the testimony was both irrelevant and unreliable. In <u>Evans</u>, we dealt with a nearly identical issue and held that the district court did not abuse its discretion in allowing expert testimony "regarding the operation of a prostitution ring, including recruitment of prostitutes and the relationship between pimps and prostitutes, and regarding jargon used in such rings." <u>Id.</u> In this case, Agent Quinn testified on the same subject matter we allowed in <u>Evans</u>, and she possessed adequate credentials and sufficient factual data on which to base this testimony. As a result, the district court did not abuse its discretion in allowing her testimony.

## D.

Finally, Geddes attacks the sufficiency of the evidence to sustain his conviction on Counts 1 and 2. Our standard of review for challenging the sufficiency of the evidence has been well repeated:

> We review de novo the sufficiency of the evidence to sustain a conviction, viewing the evidence in a light most favorable to the verdict and accepting all reasonable inferences supporting the verdict. Furthermore, [w]e will overturn [Geddes's] conviction only if no reasonable jury could have found him guilty beyond a reasonable doubt. The standard of review for sufficiency-of-the-evidence challenges is strict. [W]e consider the same quantum of evidence that was presented at trial, even if some of the evidence was improperly admitted. Finally, a victim's testimony alone can be sufficient to prove the sex crime in question.

<u>United States v. Bell</u>, 761 F.3d 900, 906-07 (8th Cir. 2014) (first and third alterations in original) (citations and internal quotation marks omitted).

To convict Geddes on Count 1, "the jury had to find he acted knowing[ly] or in reckless disregard of the fact that means of force, threats of force, fraud, coercion, or any combination of such means would be used to cause [Schreiner] to engage in

-10-

a commercial sex act." Campbell, 764 F.3d at 889 (internal quotation marks omitted). Geddes's entire argument on this point concerns whether the prosecution established the mens rea required by 18 U.S.C. § 1591. The jury convicted Geddes on Count 1 after being presented with conflicting testimony. In short, Schreiner testified that Geddes hit her in the face on two occasions and that she did not engage willingly in prostitution. Funk confirmed that Geddes hit Schreiner and further testified that Geddes was running the operation and receiving any and all money from the sex acts. Geddes, on the other hand, testified that Schreiner was a prostitute before the trip and that she participated in every act voluntarily. Given that "[c]redibility determinations are uniquely within the province of the trier of fact," United States v. Alaboudi, 786 F.3d 1136, 1146 (8th Cir. 2015) (quoting United States v. Goodale, 738 F.3d 917, 923 (8th Cir. 2013)) (internal quotation marks omitted), the jury was entitled to afford more weight to the evidence presented by the prosecution. The evidence presented at trial was sufficient to sustain the conviction on Count 1.

To convict Geddes on Count 2, the jury had to find that he "knowingly transport[ed] [Schreiner] in interstate or foreign commerce . . . with intent that [she] engage in prostitution." 18 U.S.C. § 2421(a). Geddes asserts that he and Schreiner formulated the plan to engage in prostitution after they entered the State of Minnesota and that both acts occurred while they were in that State. Therefore, according to Geddes, he never transported her across state lines for the purpose of engaging in prostitution. We disagree. In addition to trial testimony where Funk and Schreiner recount the group's movements between Superior and Duluth, the prosecution presented expert testimony on the analysis of the records for cell phones possessed by Geddes and Schreiner. The expert witness, Special Agent Joseph Raschke, explained to the jury that cell phones are programmed to find and use the strongest signal, and that the location of the tower being used by a particular phone at a given time means that the phone itself is in close proximity to that tower. He testified that, on January 8, both phones pulled a signal from a tower in Duluth, Minnesota around 9:06 p.m. and then switched to a tower in Superior, Wisconsin around 9:45.

Likewise, according to Agent Raschke's testimony, a similar pattern occurred on January 12 when the phones switched from using towers in Duluth to towers in Superior. Thus, in Agent Raschke's opinion, the phones were in Duluth when using Minnesota towers and in Superior when using Wisconsin towers. In his brief, Geddes asserts that "prostitution came up for the first time while driving from Rochester to Duluth" on January 7. Appellant's Br. 34. Accepting all reasonable inferences supporting the guilty verdict on Count 2, the jury was entitled to believe that the interstate movements on January 8 and 12—both after the date on which, according to Geddes, the prostitution plan was first discussed—were made with the intent of engaging in prostitution.

The evidence was sufficient to support Geddes's conviction on both counts.

III.

For the reasons stated herein, we affirm Geddes's conviction.