# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-2287

_____

United States of America

*Plaintiff - Appellee*

v.

Carl Campbell, also known as Nutty Boy, also known as Carl Smith, also known as Karl Campbell, also known as Earl Campbell, also known as Carl Michael

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: March 14, 2014
Filed: August 22, 2014

_____

Before COLLOTON, SHEPHERD, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Carl Campbell appeals his conviction and his sentence for one count of sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. § 1591(a)(1), (a)(2), and (b)(1); one count of interstate transportation for prostitution, in violation of 18 U.S.C. § 2422(a); two counts of sex trafficking of a child, in violation of 18 U.S.C. § 1591(a)(1), (b)(2), and (c); and one count of obstructing sex trafficking

enforcement, in violation of 18 U.S.C. § 1591(d). He was convicted at trial of all five counts. The district court[1] imposed three life sentences and two 20-year sentences to run concurrently. Campbell appeals the denial of his motion to suppress; raises several evidentiary challenges; claims he received ineffective assistance of counsel; and contests his sentence. With jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background[2]

In August 2010, Mindy Alesch and Carl Campbell met and began dating in Sioux Falls, South Dakota. After several tumultuous months, Alesch left Campbell on July 12, 2011, while he was sleeping in their hotel room in Chicago, Illinois. Shortly after leaving the hotel, she was pulled over in a traffic stop by Officer Donald Giuliano of the Franklin Park, Illinois, Police Department. Alesch told Officer Giuliano that Campbell had coerced her into prostitution. She told police Campbell's hotel and room number and gave them her room key, and she was taken to the police station for questioning. The officers arrested Campbell, then seized and inventoried the items found in the room, including several laptops (one with the screen open to a website hosting prostitution advertisements), cell phones, and identification cards. Campbell was then charged under Illinois law with promoting prostitution. While he was in custody, he and Alesch wrote each other several letters. Many of the letters were subsequently admitted at his trial, including one in which Campbell asked Alesch to recant her statements to the Chicago police.

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

[2]"We recite the facts in the light most favorable to the jury's verdict, affording the government all reasonable inferences." United States v. Tate, 633 F.3d 624, 626 n.2 (8th Cir. 2011) (citation omitted).

Department of Homeland Security Special Agent Charla Aramayo was leading a team investigating prostitution in Sioux Falls when, in March 2012, she learned Campbell was incarcerated in Illinois. Pursuant to a grand jury subpoena, all evidence recovered during Campbell's arrest, as well as an exhibit list with identification numbers for the unopened bags of evidence, was transferred from the Cook County State's Attorney's Office to Agent Aramayo's custody. Agent Aramayo inventoried the items without opening these bags and spoke with Officer Giuliano, who advised that one of the computers had revealed evidence of various prostitution advertisements. She then applied for and was granted a search warrant for this evidence by Magistrate Judge John E. Simko. Campbell appeals the denial of his motion to suppress this evidence.

Campbell was charged with the sex trafficking of Alesch by force, fraud, or coercion,[3] and with transporting her across state lines for purposes of prostitution. In the course of her investigation, Agent Aramayo discovered Campbell had also engaged at least three other young women in prostitution before he met Alesch. He was subsequently charged with two counts of sex trafficking of a minor, girls identified as N.K. and L.O., and with one count of obstruction of sex trafficking enforcement based on the letters he sent to Alesch from jail. He was not charged with the sex trafficking by force, fraud, or coercion of the third additional person, a Sioux Falls woman identified as J.R., but his conduct with her was factored into the calculation of his offense level at sentencing.

---

[3]"Whoever knowingly— . . . recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person . . . knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not yet attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)." 18 U.S.C. § 1591(a)(1).

Prior to trial, the government submitted a notice of intent to introduce *res gestae* evidence and evidence pursuant to Fed. R. Evid. 404(b). Specifically, in an effort to show Alesch was coerced into prostitution, the government sought to introduce evidence that Campbell had physically assaulted both J.R. and Alesch. Campbell contended evidence concerning J.R. could only show a propensity toward violence and, regardless, his conduct with J.R. was simply not comparable to his relationship with Alesch. Campbell objected that any assault of Alesch not directly connected to prostitution was irrelevant and that all assault evidence was more prejudicial than probative. The district court admitted evidence of all assaults. The court found Campbell's similar conduct with J.R. rebutted his defense that violence was simply part of his romantic relationship with Alesch and that his assaults on Alesch were all intrinsic to his exercise of coercion. See 18 U.S.C. § 1591(e)(2)(B) (defining "coercion" to include "any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person"). This ruling permitted the government to present much of its evidence, including testimony by law enforcement officers, photographs of Alesch's injuries, and extensive testimony by Alesch herself.

The jury convicted Campbell of all five counts. The district court imposed three life sentences and two 20-year sentences, to run concurrently. Campbell appeals. We address each of his claims in turn.

## II. Discussion

### A. Motion to Suppress

Campbell appeals the district court's denial of his motion to suppress, arguing the warrant failed to provide enough detail for the officers to know the items to be

searched.[4] The Fourth Amendment mandates that "no Warrants shall issue . . . [unless] particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. We review de novo whether a search warrant satisfies this particularity requirement. United States v. Fiorito, 640 F.3d 338, 346 (8th Cir. 2011). Although "[t]he Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents," "a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." Groh v. Ramirez, 540 U.S. 551, 557–58 (2004).

The warrant authorized the search of the property "described in Attachment A, which is incorporated into this search warrant by reference," and the parties and the district court considered the warrant and Attachment A as one document governing the scope of the search. Attachment A—titled "description of property to be searched for and seized"—listed the evidence bags from Cook County to be opened, each bag's unique identification number, and information about the contents as perceived without opening the bags. In addition, Attachment A indicated the types of information that would be sought from the laptops, CDs, and cell phones at issue. Reading the two documents together, we find the Fourth Amendment's particularity requirement was satisfied. See United States v. Riesselman, 646 F.3d 1072, 1076–77 (8th Cir. 2011). We affirm the district court's denial of Campbell's motion to suppress.

---

[4]Campbell does not raise any issues regarding the seizure of the evidence pursuant to his arrest, or its transfer from the State's Attorney's Office to federal authorities.

## B. Evidentiary Rulings

Campbell raises several evidentiary arguments on appeal. "We review a district court's interpretation and application of the rules of evidence de novo and its evidentiary rulings for abuse of discretion." United States v. Street, 531 F.3d 703, 708 (8th Cir. 2008). We review de novo evidentiary rulings that "implicate constitutional rights." United States v. Pumpkin Seed, 572 F.3d 552, 558 (8th Cir. 2009). We reverse only if we find an error was not harmless. Generally, "the government is required to establish that we do not have 'grave doubt' as to whether the error substantially influenced the outcome of the proceedings." United States v. Haidley, 400 F.3d 642, 645 (8th Cir. 2005) (quoting Kotteakos v. United States, 328 U.S. 750, 764–65 (1946)). Yet "[i]f the error is of constitutional magnitude, then the government is required to prove the error was harmless beyond a reasonable doubt." Id. (citing Chapman v. California, 386 U.S. 18, 24 (1967)).

## 1. Evidence of Campbell's Other Acts

### a. Intrinsic Evidence

The district court allowed the government to offer evidence that Campbell had physically assaulted Alesch on a number of occasions, concluding this evidence was *res gestae*. *Res gestae*, also known as intrinsic evidence, is "evidence of wrongful conduct other than the conduct at issue . . . offered for the purpose of providing the context in which the charged crime occurred." United States v. Johnson, 463 F.3d 803, 808 (8th Cir. 2006) (citation omitted). "Such evidence is admitted [to] . . . complete[] the story or provide[] a total picture of the charged crime." Id. (quotation omitted). Unlike evidence admitted under Rule 404(b), pertaining to distinct prior acts, intrinsic evidence relates to crimes that are "so blended or connected with the ones on trial as that proof of one incidentally involves the others." United States v. Luna, 94 F.3d 1156, 1162 (8th Cir. 1996) (quotation omitted).

Campbell's specific argument is that each assault against Alesch had to be directly connected to prostitution in order to be admissible as *res gestae*. Under the facts and circumstances of this case, we disagree. The jury could find his actions amounted to coercion if the assaults were part of a "pattern intended to cause a person to believe that failure to perform an act [of prostitution] would result in serious harm . . . ." 18 U.S.C. § 1591(e)(2)(B). In doing so, the jury was required to assess how "a reasonable person . . . in the same circumstances" as Alesch would perceive Campbell's conduct. 18 U.S.C. § 1591(e)(4). The physical assaults and the prostitution happened within a turbulent seven-month period. The assaults that were directly connected to prostitution—such as when Campbell believed money was missing—occurred during this time. The district court did not abuse its discretion in finding that Campbell's additional assaultive behavior during this same time period could be viewed as a "pattern" intended to make Alesch believe that failure to continue with prostitution—by simply refusing, reporting it to the police, or leaving him—would result in serious harm.[5] See United States v. Bell, No. 13-2641, ___ F.3d ___, 2014 WL 3805454, at *6 (8th Cir. Aug. 4, 2014) (for sex trafficking victim who "testified to several incidents where [the defendant] physically assaulted her when she allegedly disobeyed or disrespected him," "[t]he physical harm was enough to cause her to perform sex acts against her will").

The court also did not err in precluding Campbell from cross-examining N.K. about her prior prostitution activity, which he argues was admissible as *res gestae*. Any evidence of N.K.'s earlier prostitution is immaterial. Since N.K. was a minor "and could not legally consent, the government did not need to prove the elements of fraud, force, or coercion, which are required for adult victims. . . . Whether [N.K.] engaged in acts of prostitution before or after [her] encounters with [Campbell] is

---

[5]Campbell also contends this evidence was inadmissible under Fed. R. Evid. 404(b). Since the court did not err in admitting it as intrinsic evidence, this argument is inapposite. See United States v. Clarke, 564 F.3d 949, 957 (8th Cir. 2009) (Rule 404(b) does not apply to intrinsic evidence).

irrelevant, and would only prove other people may be guilty of similar offenses of recruiting, enticing, or causing [her] to engage in a commercial sex act." United States v. Elbert, 561 F.3d 771, 777 (8th Cir. 2009).[6]  Moreover, such evidence is excluded under Fed. R. Evid. 412.  Id.

### b. Fed. R. Evid. 404(b)

Campbell also claims the district court erred in allowing J.R.—who was not the subject of any of the charges against him—to testify that he assaulted her, too.  See Fed. R. Evid. 404(b).  As a result, he asserts, this evidence could serve only to prove his propensity toward violence, since the assaults were irrelevant to the charges concerning Alesch.  "Evidence of a crime, wrong, or other act" is not admissible for this purpose, but it may be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Id. We reverse the district court's 404(b) ruling "only when such evidence clearly had no bearing on the case."  United States v. Tyerman, 701 F.3d 552, 562 (8th Cir. 2012) (quotation omitted).  After Campbell and J.R. spent several weeks together, J.R. grew to believe they were in a romantic relationship, though he did not.  J.R. went to Sioux Falls hotels on several occasions to engage in commercial sex acts that Campbell had arranged; she testified that she "didn't want him mad" at her if she refused.[7]   J.R.

---

[6]Similarly, the court did not violate Campbell's constitutional rights to present a defense and confront the witnesses against him by prohibiting his cross-examination of N.K. and L.O. regarding past prostitution.  Evidence irrelevant to his charge for sex trafficking of a minor "does not provide a defense" for this crime, and its exclusion does not violate the Confrontation Clause.  Elbert, 561 F.3d at 777.

[7]J.R. in fact never followed through with a sex act on these occasions.  She testified that, as Campbell had instructed her, she took the money from the customer first and asked the customer to take a shower.  She then left the hotel room while the customer was showering and waited a sufficient amount of time before returning to Campbell with the money, without ever telling him she had not engaged in prostitution.

then testified to two specific times when Campbell was physically violent toward her. The court found this similarly violent conduct with J.R. was relevant to rebut Campbell's defense that his violence with Alesch was just a part of their romantic relationship and, therefore, unrelated to his charge of sex trafficking. Accordingly, the district court admitted J.R.'s testimony about her relationship with Campbell to show his absence of mistake or accident, intent, plan, and preparation in sex trafficking. See Fed. R. Evid. 404(b). Campbell did not request a limiting instruction, but the court included one with the Final Jury Instructions.

The court did not abuse its discretion in admitting this evidence under Rule 404(b). To convict Campbell of Count 1, the jury had to find he acted "knowing or in reckless disregard of the fact that means of force, threats of force, fraud, coercion, or any combination of such means would be used to cause [Alesch] to engage in a commercial sex act." To convict him of Count 2, the jury had to find that he "knowingly persuaded, induced, enticed, or coerced [Alesch] to travel in interstate commerce . . . with the intent that [Alesch] engage in prostitution." "Both his intent and his knowledge were thus called into question." United States v. Jarrett, 956 F.2d 864, 867 (8th Cir. 1992). Evidence of Campbell's conduct with J.R., which "closely paralleled th[at] for which he was on trial," was offered to show his intent that Alesch engage in prostitution as well. Id. Moreover, Campbell's actions with J.R. were sufficiently similar to those with Alesch to be admitted for this purpose. See Tyerman, 701 F.3d at 562 (requiring 404(b) evidence to be "similar in kind . . . to the crime charged"). Campbell did not consider J.R. his girlfriend, and he was violent with her only a few times, in contrast to his frequent abuse over several months of his then-girlfriend Alesch. However, both women were socially isolated when he met them, were pleased by his attention and gifts, and had few options for retreat. His violent conduct with both began shortly after he met them and coincided in large part with the time they were involved in prostitution. Both women testified that, particularly after the prostitution started, they were afraid of disobeying him. Finally, while this evidence was certainly damaging to Campbell, it was sufficiently probative

of his primary defense, and thus to the jury's consideration of the charges against him, that it was properly admitted under 404(b).

## 2. Photographs and Hotel Receipts

At trial, the government introduced into evidence several photographs of Alesch's injuries and hotel receipts in his and Alesch's names. Campbell asserts this evidence was admitted too early in the trial to be relevant, as the government had not first presented evidence of commercial sex acts. However, evidence may be admitted before the proof sufficient to establish its relevance has been introduced. See Fed. R. Evid. 104(b). After the evidence was admitted, Alesch testified Campbell had assaulted her on each of the three nights when her injuries were photographed. She did not want to call the police or report the prostitution because she was afraid of what Campbell might do. All three assaults were thus connected to Campbell's exertion of control over her, which was relevant to whether he had coerced her into prostitution activity. The photographs were properly admitted.[8]

Similarly, the district court did not abuse its discretion in conditionally admitting the hotel receipts at the time they were introduced. The court admitted them based on the government's assurance that Alesch would later testify she participated in commercial sex acts at hotels in Sioux Falls.[9] When Alesch testified,

_____

[8]Campbell asserts that displaying the photographs so early was also unfairly prejudicial: the photographs left the jury "with an indelible impression" that Alesch deserved their sympathy, long before she was subject to cross-examination. He did not object clearly on this basis at trial, and thus likely failed to preserve this argument; regardless, we find it fails: Campbell later questioned Alesch extensively, and he has not persuaded us this early display affected the verdict.

[9]When asked why the hotel receipts were being offered before Alesch's testimony, and thus before their relevance was established, the government simply responded: "Just want to, Your Honor." The district court accepted this response, under the assumption that "it becomes relevant at a later time," and permitted the

she listed five local hotels where she engaged in prostitution, two of which corresponded to the receipts in question. The government thus met its burden under Fed. R. Evid. 104(b) to connect them to prostitution acts.[10]

### 3. Testimony by Law Enforcement Officers

Campbell argues the district court erroneously admitted hearsay by two Sioux Falls police officers and Officer Giuliano, the officer who first pulled over Alesch in a traffic stop in Illinois.[11] The Sioux Falls officers each testified they took reports from Alesch at the scene of an alleged assault or at her hospital room, where she was receiving treatment for injuries. Officer Giuliano described Alesch's account of an assault by Campbell and her ensuing departure from their hotel in Chicago. Hearsay statements are out-of-court statements offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). The government contends the officers' statements were instead offered to show the effect on the listener by explaining how the officers

government to "control the method and the manner he wants to put in his case so long as it all ties in in the end." We simply note that a more substantive response from the government would have provided both the district court and this court with more information to evaluate the defendant's objection.

[10]Campbell also contends the unproved impression that each receipt indicated a commercial sex act resulted in unfair prejudice. However, Alesch later testified she performed at least fifty and "probably" more than one hundred such acts in Sioux Falls. Even if the jury did have such an impression, Alesch's testimony supported a finding that the number of commercial sex acts she had performed far exceeded the number of receipts admitted. This argument is without merit.

[11]Although Campbell made several hearsay objections during Agent Aramayo's trial testimony, on appeal he has not identified any erroneous rulings by the court. This argument is not properly presented for our consideration. Moreover, the district court gave a limiting instruction: the jury should consider what other officers told Agent Aramayo only for purposes of considering how she pursued the investigation.

determined the next steps in their investigation.  See United States v. Brown, 560 F.3d 754, 764 (8th Cir. 2009).

We agree that the Sioux Falls officers simply stated why they were interviewing Alesch, such that their testimony was not inadmissible hearsay.  See id. Officer Giuliano, on the other hand, testified extensively regarding what Alesch had told him about Campbell: that Campbell has assaulted her; that "she was performing acts of prostitution at the control and direction of the Defendant"; that "this is the first opportunity she's had in approximately a month to get away from him"; and that "she had earned [the $1,240 cash in her possession] through committing acts of prostitution," though she had to take it from Campbell before she left.  Officer Giuliano went beyond explaining why he next went to the hotel room to speak with, and ultimately arrest, Campbell.  This portion of Officer Giuliano's testimony was not properly offered to explain his investigation and, thus, was hearsay.  The district court also did not provide a limiting instruction.  See id. (finding no abuse of discretion when district court twice instructed the jury to consider evidence as to "why an officer conducted an investigation in a certain way" for that limited purpose). Nevertheless, after careful review of the record, we find this error harmless.  Officer Giuliano's testimony was cumulative: Alesch herself testified to this very same information immediately after Officer Giuliano left the witness stand.  We recognize the possible danger that a jury may give more weight to testimony from a law enforcement officer than from a lay witness whose credibility is called into question. Cf. United States v. Johnson, 688 F.3d 494, 500 (8th Cir. 2012) (reviewing impartiality of a juror "who admitted there 'might be a possibility' she would find law enforcement officers more credible than other witnesses"); see also United States v. Jones, 193 F.3d 948, 951 (8th Cir. 1999) (same).  In this case, however, the physical evidence from Campbell's hotel room revealing his involvement in prostitution and other witnesses' accounts of his violence toward Alesch convince us that this error was harmless.

Finally, the court properly sustained the government's hearsay objection during Campbell's cross-examination of Officer Giuliano. On direct examination, Officer Giuliano testified Alesch told him that Campbell had assaulted her in the hotel parking lot just before she left. On cross, Campbell asked Officer Giuliano whether Alesch explained that the assault was a result of Campbell's jealousy over her possible involvement with another man. Though Campbell said he wanted to follow up on Officer Giuliano's testimony about "the fact of the abuse," the court correctly sustained the government's objection: in this context, Alesch's explanation for the assault would be hearsay. On appeal, Campbell asserts Alesch's mention of jealousy was inconsistent with her testimony that his assaults were intended to compel her prostitution, making Officer Giuliano's answer admissible under Fed. R. Evid. 801(d)(1)(A) or for impeachment purposes. See United States v. Yarrington, 634 F.3d 440, 448 (8th Cir. 2011) (citation omitted). Since Campbell made neither argument to the district court, these contentions were not preserved for appeal. See United States v. Harris-Thompson, 751 F.3d 590, 602 (8th Cir. 2014).[12]

## 4. Testimony Regarding Alesch's Prior Domestic Abuse

The district court allowed Alesch to testify that she had in the past been physically abused by an ex-boyfriend and by her father. Campbell contends this evidence is irrelevant to a charge of sex trafficking by force, fraud, or coercion. In assessing coercion, the jury was required to consider whether Campbell's conduct was "sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm." 18 U.S.C. § 1591(e)(4). Jurors hearing Alesch describe the violence in her relationship with Campbell may have questioned why she did not leave him sooner

---

[12]To the extent Campbell's reply brief asserts this limit on cross-examination violated his constitutional rights, this argument has been waived. See United States v. McLain, 709 F.3d 1198, 1200 n.1 (8th Cir. 2013) (citation omitted).

or report him to the police. Testimony regarding a victim's vulnerabilities, including a "troubled past," may be relevant in considering coercion if it "help[s] explain why a victim continued to succumb to the defendant's persuasion." Bell, 2014 WL 3805454 at *12 (affirming admission of evidence of physical abuse of one sex trafficking victim by an ex-boyfriend and of another by her father). Alesch's testimony that she had found it difficult to leave an abusive ex-boyfriend and that her father beat her mother after she reported his abuse to law enforcement thus helped explain how she responded to Campbell. The court did not abuse its discretion in admitting this evidence.[13]

## C. Ineffective Assistance of Counsel

Campbell argues his attorney provided ineffective assistance in two ways: (1) he did not know how a specific case applied to Campbell's charges, and (2) he produced for the government copies of all letters Alesch wrote to Campbell in jail. Although "ordinarily, we do not address claims of ineffective assistance of counsel on direct appeal because such claims usually involve facts outside of the existing record," United States v. Adkins, 636 F.3d 432, 434 (8th Cir. 2011) (quotation omitted), Campbell asserts the record is complete on these two arguments. While the district court developed a record on the first claim, the same lawyer who represented Campbell at trial now represents him on appeal. We think it a better course of action to allow Campbell to develop both arguments further in post-conviction proceedings. See Hoffman v. Arave, 236 F.3d 523, 531–32 (9th Cir. 2001) (sharing other circuits' concern that "a criminal defendant must be able to obtain an objective assessment of trial counsel's performance").

---

[13]Campbell also contends this testimony made Alesch seem more sympathetic and was thus unfairly prejudicial to him. Noting that he did not object on this basis at trial, we nonetheless find this evidence was important to the jury's determination of the coercion element, and this probative value was not "substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403.

## D. Sentence

Finally, Campbell argues his sentence violated his constitutional rights against double jeopardy and to a fair trial. Campbell was sentenced to life on Counts 1, 3, and 5, and to 20 years' imprisonment on Counts 2 and 4, with all sentences to run concurrently.

## 1. Double Jeopardy

Campbell contends the district court violated his right against double jeopardy by imposing a sentence for obstruction of sex trafficking enforcement (Count 4) and a sentence enhancement to the sex trafficking conviction (Count 1) for the same conduct: sending letters to Alesch asking that she recant her statements to Chicago police. We review "de novo whether the district court's application of the sentencing guidelines amounts to impermissible double counting," in violation of the Fifth Amendment. United States v. Myers, 598 F.3d 474, 475–76 (8th Cir. 2010) (quotation omitted). "Double counting occurs when one part of the [g]uidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the [g]uidelines." Id. at 476 (quotation omitted).

Campbell's offense level was calculated under United States Sentencing Guidelines Manual ("USSG") provisions intended to avoid double counting. Campbell's underlying offense (Count 1) and his obstruction offense (Count 4) were grouped together under USSG § 3D1.2(c). See USSG § 3C1.1 cmt. n.8 (requiring § 3D1.2(c) grouping in such circumstances). His adjusted offense level for this group was then correctly increased by 2 levels pursuant to USSG § 3C1.1 ("Obstructing or Impeding the Administration of Justice"). "This rule . . . ensur[es] that the obstructive conduct is taken into account only once." United States v. Yielding, 657

F.3d 688, 717 (8th Cir. 2011) (citing USSG §§ 3C1.1 cmt. n.8, 3D1.2 cmt. n.5).  As in Yielding, the court grouped the two offenses under § 3D1.2(c) and set the two sentences to run concurrently.  See id. at 697.  "There was thus no double-counting of the obstructive conduct.  Because [Campbell] has not shown that the district court imposed multiple punishments for the same offense, there was no violation of the Double Jeopardy Clause."  Id. at 717.

## 2. Right to a Fair Trial

Campbell claims that factoring an uncharged count of sex trafficking into his sentencing calculations violated his Sixth Amendment right to a fair trial: absent a jury determination of the fact that there was such a victim, no fact relative to that charge may be used in sentencing calculations.  However, this victim testified at his trial, and at sentencing the court found the requisite facts related to this conduct.  Increasing a sentence based on judicially found facts would violate his rights only if the sentence exceeded the statutory maximum.  United States v. Smith, 681 F.3d 932, 935–36 (8th Cir. 2012) (citing United States v. Booker, 543 U.S. 220, 244 (2005)).  Since Campbell was convicted of three counts that each permitted a life sentence, we cannot find this uncharged conduct increased his sentence; moreover, no statutory maximum applies.  This sentence does not violate his constitutional rights.

## III. Conclusion

For these reasons, we affirm the district court's judgment.

_____